SUSANNE EISENBERG, Indiv., *et al.*, Plaintiffs-Appellants, v. THE INDUSTRIAL COMMISSION OF ILLINOIS, Defendant-Appellee.

First District (2nd Division)  No. 1—00—2860

Opinion filed February 18, 2003.—Rehearing denied March 19, 2003.

374

Tobin M. Richter, P.C., of Chicago, for appellants.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Bryan J. Rose, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant-appellee, the Industrial Commission of Illinois (Commission), issued notices of noncompliance to plaintiffs-appellants, Susanne Eisenberg and Michael Pelfresne (plaintiffs), alleging that each was individually an "employer" at six separate locations and that plaintiffs had failed to comply with the insurance coverage requirements of the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). During the Commission's investigation concerning plaintiffs' compliance with the Act, plaintiffs filed a verified complaint and verified first amended complaint in the trial court which, among other things, sought a declaration that certain sections of the Act were unconstitutional, that the actions of the Commission against them were *ultra vires*, and that the Commission should be enjoined from proceeding against them at the administrative level based on a lack of jurisdiction. The Commission ultimately dismissed its allegations against plaintiffs. After they were dismissed, plaintiffs filed a second amended complaint against the Commission which, in count I, sought a declaratory judgment that certain sections of the Act and the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2000)) were unconstitutional. In count II, plaintiffs claimed that certain actions taken by the Commission against them were *ultra vires*. The Commission moved to dismiss count I, and the trial court granted the motion in favor of the Commission on the basis of standing. Later, plaintiffs moved for summary judgment on the *ultra vires* cause of action (count II) and the Commission filed a cross-motion for summary

judgment. The trial court granted the Commission's cross-motion for summary judgment and denied plaintiff's summary judgment motion.

The issues raised on appeal are whether the trial court correctly found that plaintiffs lacked standing to challenge the constitutionality of certain sections of both acts because the charges against them had been dismissed, and whether the trial court correctly entered summary judgment in favor of the Commission on the basis that its actions were not *ultra vires* as a matter of law. We state the following background facts.

On March 23, 1998, the Commission issued notices of noncompliance to plaintiffs as part of an investigation in *In re Insurance Compliance Matter of Attorney Michael Schiessle*, Ill. Indus. Comm'n Rep. 97INC00032 (March 4, 1999). The investigation concerned six different places of amusement, including five go-cart tracks and one batting machine facility. The notices alleged that plaintiffs were "employers" under section 3 of the Workers' Compensation Act and that, as "employers," they were required by law to insure liability to pay workers' compensation benefits by obtaining a workers' compensation insurance policy. 820 ILCS 305/3, 4(a) (West 2000).

As we noted above, while the Commission's investigation concerning plaintiffs' compliance with the Act was pending, plaintiffs filed a verified complaint and verified first amended complaint in the trial court which sought a declaration that certain sections of the Act were unconstitutional, that the actions of the Commission against them were *ultra vires*, and that the Commission should be enjoined from proceeding against them at the administrative level based on lack of jurisdiction. The trial court denied plaintiffs' request for injunctive relief on January 6, 1999.

On March 4, 1999, the Commission dismissed the charges against the plaintiffs on the basis that "the evidence did not show that [they] were involved in the everyday running of the businesses so as to hold them personally liable." Following the dismissal of the charges, plaintiffs filed a second amended complaint (complaint) that sought a declaratory judgment, in count I, that certain sections of both acts were unconstitutional and, in count II, that certain actions by the Commission were *ultra vires*. Specifically, in paragraph 26, the complaint alleged:

> "The evidence at the hearing proved that each site has been operated by an operator licensed by the Illinois Department of Labor since at least 1988; and that these licenses were applied for, evaluated for completeness[,] and then *** issued by the Illinois Department of Labor ***. [The] plaintiffs were not the licensed operators nor were they identified in any way on the applications of the licensed operators."

Count I, paragraphs 38, 39, and 40 of the complaint, alleged that section 19(f)(2) of the Act (820 ILCS 305/19(f)(2) (West 2000)) is unconstitutional because the Commission has discretion to fix the amount of the bond necessary to take an appeal from an adverse decision by the Commission.

Further, count I, paragraphs 41 and 42, alleged that the civil penalty provision in the Act (820 ILCS 305/4(d) (West 2000)) is vague in that it "lacks sufficient standards to guide the discretion of the Commission in determining when civil penalties should be imposed." Further, paragraph 43 alleged that the statute of limitations cannot be determined in section 4(d). Accordingly, plaintiffs alleged that this section was unconstitutional.

Count I, paragraphs 44 and 45, alleged that the plaintiffs were denied due process because they were not allowed access by the Commission to potentially exonerating information in the Commission's file.

Count I, paragraphs 46, 47, and 48, alleged that section 4(d) in each act (820 ILCS 305/4(d) (West 2000); 820 ILCS 310/4(d) (West 2000)) improperly authorized the Commission to prosecute civil penalty proceedings at the administrative level. Specifically, paragraph 48 alleged that the Commission's attorney was involved in improper multiple roles, including (1) Commission attorney; (2) witness at the hearing; and (3) acting member of the Commission in the chairman's absence, which resulted in an unfair hearing and a partial tribunal.

Count I, paragraph 49, alleged that section 16 of each act (820 ILCS 305/16 (West 2000); 820 ILCS 310/16 (West 2000)) did not set proper rules for the admission of evidence.

Finally, count I, paragraphs 50 and 51, alleged that the burden of proof was not properly established in the Act because the Act provides for both a petty offense in section 26 (820 ILCS 305/26 (West 2000)) and a civil penalty.

In count II of the complaint, paragraphs 54 and 55, plaintiffs alleged that the assistant Attorney General stated on the record at the hearing that no penalties would be considered until a finding was made as to whether plaintiffs were employers. Absent a hearing on employer status, the Commission had no jurisdiction over plaintiffs until it could establish that plaintiffs were employers within the meaning of the Act. As a result, the Commission's actions were *ultra vires* according to plaintiffs.

In count II, paragraphs 56 through 59, plaintiffs alleged the Commission had no jurisdiction because the notices issued to plaintiffs were defective under the Illinois Administrative Code. 50 Ill. Adm. Code § 7100.100(c) (1996). Specifically, plaintiffs alleged that the Code

was violated because the notices of hearing were sent out simultaneously with the compliance notices.

Finally, count II, paragraph 60 and 61, alleged that, where the Illinois Department of Labor had previously "adjudicated" the identity of the licensed operators of certain facilities, it was *ultra vires* for the Commission to ignore those "adjudications" and prosecute plaintiffs.

The Commission moved to dismiss count I of the second amended complaint under section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)) on the basis that plaintiffs lacked standing to raise their claims because the administrative proceeding against plaintiffs had been dismissed. On September 30, 1999, the trial court granted the motion with respect to count I but denied the motion concerning the *ultra vires* claim. On May 19, 2000, plaintiffs filed a motion for summary judgment claiming that the Commission's actions were *ultra vires* as a matter of law. On July 26, 2000, the Commission filed a cross-motion for summary judgment. On August 8, 2000, the trial court granted the Commission's cross-motion for summary judgment and denied plaintiffs' summary judgment motion. Plaintiffs appeal the dismissal of count I and the summary judgment in favor of the Commission on count II.

■ We now address the first issue. Our standard of review of motions to dismiss under section 2—619 is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583, 736 N.E.2d 1174 (2000).

■ The appellate court has held:

"Generally, a plaintiff has standing to maintain a declaratory judgment action if he meets two requirements. First, there must be an actual controversy, a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy. Second, the party seeking the declaration must be interested in the controversy and must possess a personal claim, status or right which is capable of being affected. [Citations.] To have standing, one must have sustained, or be in immediate danger of sustaining, a direct injury. [Citation.]

The actual controversy requirement of standing cannot be satisfied where the underlying issues of the case are moot or premature. [Citation.] An issue is considered moot where events occur which make it impossible for the court to grant effectual relief. [Citations.] When it becomes apparent that an opinion cannot affect the results as to the parties or the controversy before it, the court should not resolve the question merely for the sake of setting a precedent or to govern potential future cases. [Citations.]" *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1027, 638 N.E.2d 736 (1994).

On appeal, plaintiffs claim that they had standing to challenge the

constitutionality of both acts under the public interest exception to the mootness doctrine. The Commission responds that, because plaintiffs were dismissed from the administrative proceeding, they lacked standing. Therefore, the Commission further argues the trial court was correct in determining that the claim was moot because the public interest exception to the mootness doctrine does not apply.

■ In Illinois:

"The criteria for application of the public interest exception include (1) the existence of a question of public nature; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur. [Citations.] There must be a clear showing of each factor in order to bring a case within this exception. [Citation.]" *People ex rel. Braver v. Washington*, 311 Ill. App. 3d 179, 185, 724 N.E.2d 68 (1999).

"Illinois courts apply the public interest exception very narrowly and require that each criterion be met. [Citations.] The public interest exception is invoked only in cases involving an extraordinary degree of public concern and only where the public interest is clear." *Sharma*, 265 Ill. App. 3d at 1028.

■ Plaintiffs claim that the facts of the instant case fall within the exception. First, they contend that the constitutionality of a statute is a public question sufficient to "bring the case" within the public interest exception, and they further suggest that the constitutionality of both acts "concern[s] all employees and employers that come under the authority of the Commission." Plaintiffs also assert that, "[e]ven though the statutes in question have been in existence for some time, the Commission's enforcement program of the 1989 amendments is new and its administration presents questions of first impression." According to plaintiffs, the second amended complaint raised the issue of the "effective denial of a right to appeal from an insurance compliance enforcement hearing because a prohibitively high bond [could] be set as a jurisdictional prerequisite to filing suit." Further, plaintiffs also pled that "the absence of statutory guidance and improper designation of power to the Commission, and the ambiguity of the statute as to a limitations period," were unconstitutional. In addition, plaintiffs claimed that the enforcement program also denied respondents access to the public file, improperly authorized the Commission staff to prosecute the action at the administrative level, failed to set a proper rule for admission of evidence, and failed to establish the burden of proof.

In their brief, plaintiffs argue that the second element of the public interest exception was satisfied because the legality of the Acts must

be determined to provide future guidance to public officials. Finally, they conclude that the third element of the exception was satisfied because a probability exists that another plaintiff will encounter the same problems.

We do not agree that the public interest exception to the mootness doctrine applies for the following reasons. First, the instant case does not involve an extraordinary degree of public concern where the public interest is very clear. While plaintiffs claim that the above-referenced facts alleged in the second amended complaint involve a public question, they fail to allege how the statutory sections complained of involve an extraordinary degree of public concern involving a clear public interest. Moreover, it has been held that the presence of a constitutional defect in a statutory requirement does not automatically mean that the public interest exception to the mootness doctrine applies. *In re Estate of Hall*, 302 Ill. App. 3d 829, 838, 707 N.E.2d 201 (1998).

Second, the authority relied upon by plaintiffs in support of their argument is distinguishable. In *Berrios v. Rybacki*, 190 Ill. App. 3d 338, 345, 546 N.E.2d 651 (1989), the reviewing court found that the public interest exception applied because whether certain arbitration directives were "rules" within the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/1—70 (West 1998)) was a public question that concerned all employees and employers pursuing or defending claims before the Industrial Commission. Specifically, the court held that, under the Procedure Act, rules that affected the private rights or procedures available to persons or entities outside the agency "should have been published in the Illinois Register, with notice to the public, comments invited or hearings held, and filed with the Secretary of State." *Berrios*, 190 Ill. App. 3d at 345. The court further determined that "[t]he public should have been given an opportunity to participate in the rule-making process, thereby enabling the Commission to apprise itself of potential problems before establishing new rules." *Berrios*, 190 Ill. App. 3d at 348.

In the instant case, there was no dispute over whether certain arbitration directives were in fact "rules" as defined in the Procedure Act. Unlike *Berrios*, this case does not involve the question of whether certain directives were properly enacted under the Procedure Act or whether the public was granted proper participation in the creation of such rules. Instead, plaintiffs here claim that certain sections of both acts are unconstitutional, yet as pointed out above, plaintiffs do not allege that the sections complained of involve an extraordinary degree of public concern involving a clear public interest.

Another case relied upon by plaintiffs is *People ex rel. Wallace v.*

*Labrenz*, 411 Ill. 618, 623, 104 N.E.2d 769 (1952). *Labrenz* involved a situation where the parents of an infant refused to consent to a blood transfusion for the child based on religious grounds. At a hearing, two doctors testified that the child would certainly die unless a transfusion was administered. Another doctor said that, while the child had a slim chance to live, it would undoubtedly be mentally impaired for life.

The trial court appointed its chief probation officer to be the guardian of the infant and directed the guardian to consent to a blood transfusion for the child. On May 4, 1951, the guardian reported to the court that the transfusion had been administered and that the child's health had significantly improved. Ultimately, the guardian was discharged and the child was returned to her parents.

The parents challenged the trial court's ruling in the supreme court upon a writ of error raising constitutional issues. The State argued that the case was moot because the transfusion had been administered, the guardian discharged, and the proceeding dismissed. However, the supreme court held that the public interest exception applied to a "highly sensitive area in which governmental action comes into contact with the religious beliefs of individual citizens." *Labrenz*, 411 Ill. at 623.

*Labrenz* is distinguishable from the instant case. In *Labrenz*, the supreme court specifically noted that the issue in that case was the "highly sensitive area" where governmental action conflicted with individual religious beliefs. *Labrenz*, 411 Ill. at 623. Here, plaintiffs allege that certain sections of both acts are unconstitutional, yet they do not explain how the case involves an extraordinary degree of public concern where the public interest is very clear. As a result, we find the authority relied upon by plaintiffs does not help resolve this question.

Moreover, plaintiffs do not make a clear showing of the second and third factors to bring the case within the public interest exception. *Washington*, 311 Ill. App. 3d at 185.

Concerning the second factor, we agree with the Commission that plaintiffs made no attempt to show why some authoritative guidance was of particular importance or that this case was the proper vehicle for such an instruction. Further, the record indicates that the enforcement program in the Act, now challenged by plaintiffs as unconstitutional, had been actively enforced in Illinois for at least four years prior to the Commission's action against plaintiffs. Since the constitutional concerns raised by plaintiffs have only occurred once in that time, the need for an authoritative determination for the purpose of guiding public officers does not appear to be extraordinarily pressing.

In regard to the third factor, we agree with the Commission that

the issue of whether plaintiffs were "employers" within the meaning of the Act could not recur because they were dismissed from the administrative proceeding. Further, in the event that the issue did recur, we agree with the Commission that the constitutionality of both acts could be evaluated in a case where a party was deemed an "employer" under the Act. As noted by the Commission, a determination on the constitutionality of the statutes in the instant case, without an actual controversy, would amount to an advisory opinion. In our view, the issues in this lawsuit evolved as a result of the Commission's action concerning whether plaintiffs were employers under the Act, and did not involve "an extraordinary degree of public concern and only where the public interest [was] very clear." *Sharma*, 265 Ill. App. 3d at 1028. As a result, we conclude that the public interest exception to the mootness doctrine did not apply and find that the trial court did not err in dismissing count I of plaintiffs' second amended complaint.

■ We next examine whether the trial court correctly entered summary judgment in favor of the Commission and against the plaintiffs in regard to the *ultra vires* claim in count II of plaintiffs' second amended complaint. In summary judgment cases, we review the evidence in the record *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993).

■ Plaintiffs first argue that the Commission's jurisdiction was limited to "employers" under section 4(a) of the Act. 820 ILCS 305/ 4(a) (West 2000). Since this section of the Act limits the Commission's jurisdiction to "employers," plaintiffs contend that the Commission could not create an employer by sending a notice of noncompliance to a person. Instead, plaintiffs argue that a hearing must proceed in two phases: one to determine who was an employer, and one to assess appropriate penalties. According to plaintiffs, upon a failure to demonstrate that plaintiffs were employers, the Commission had no subject matter jurisdiction over them.

This argument fails primarily because plaintiffs provide no persuasive authority that would require the Commission to render a determination that plaintiffs were employers prior to issuing a notice of noncompliance. As correctly noted by the Commission, section 4(d) of the Act states, in relevant part:

> "Upon a finding by the Commission, after reasonable notice and hearing, of the knowing and wilful failure of an employer to comply with any of the provisions of paragraph (a) of this Section ***, the Commission may assess a civil penalty of up to $500 per day for each day of such failure or refusal after the effective date of this amendatory Act of 1989." 820 ILCS 305/4(d) (West 2000).

We conclude that under section 4(d), the Commission has author-

ity, after notice and a hearing, to determine whether the charged party is an "employer" and to impose civil penalties upon an "employer." The record in the instant case indicated that the Commission followed the proper procedures under section 4(d) of the Act. Plaintiffs offer no support for the proposition that the Commission's hearing should have proceeded in two stages, requiring that the Commission first determine that plaintiffs were "employers," prior to investigating whether they had violated the insurance compliance requirements in the Act.

The authority relied upon by plaintiffs is also inapposite. The only case relied upon by plaintiffs is *Henriksen v. Illinois Racing Board*, 293 Ill. App. 3d 569, 570, 688 N.E.2d 771 (1997), which involved the territorial extent of the Illinois Racing Board's jurisdiction. *Henrickson* is not controlling on the issue in this case.

■ Next, plaintiffs claim that the Commission's action against plaintiffs was *ultra vires* because the Commission knew that no employee making claims under the Act considered plaintiffs to be an "employer." We reject this argument. Plaintiffs' argument is another attempt at claiming the Commission was required to determine plaintiffs' status as an employer prior to holding an administrative proceeding against them on the merits. We have already determined that such a requirement did not exist, and plaintiffs have provided no authority to the contrary.

■ Plaintiffs also claim that the Commission improperly overruled its own decision in *State of Illinois Industrial Comm'n v. Midwest Rack Manufacturers*, Ill. Indus. Comm'n Rep. 98INC1176 (December 10, 1998), in "its *ultra vires* rush to punish somebody." We reject this argument under Supreme Court Rule 341(e)(7). 177 Ill. 2d R. 341(e)(7). In their brief, plaintiffs have failed to provide any authority in support of an argument that the Commission committed an *ultra vires* act by overruling itself in the *Midwest Rack* decision. Under Supreme Court Rule 341(e)(7), "an appellant's brief must contain his contentions and the reasons therefor, accompanied by citation of authorities and pages of the record." *Elder v. Bryant*, 324 Ill. App. 3d 526, 533, 755 N.E.2d 515 (2001). A failure to provide proper argument and authority results in a forfeiture of the argument. *Elder*, 324 Ill. App. 3d at 533. Therefore, this argument is waived.

Next, plaintiffs claim that the notices served upon them were defective because the notice of noncompliance and the notice of formal hearing cannot be served simultaneously. This argument is also waived under Supreme Court Rule 341(e)(7). 177 Ill. 2d R. 341(e)(7). In their brief, plaintiffs failed to provide any citation to the record that evidenced the fact that the notice of noncompliance and the notice of

formal hearing were served simultaneously. As we noted above, "an appellant's brief must contain his contentions and the reasons therefor, accompanied by citation of authorities *and pages of the record.*" (Emphasis added.) *Elder*, 324 Ill. App. 3d at 533. As pointed out above, a failure to provide proper argument and authority results in a forfeiture of the argument. *Elder*, 324 Ill. App. 3d at 533.

Further, as noted by the Commission, the record indicates that the date on the notices of noncompliance was March 23, 1998, where the date on the notices of hearing to plaintiffs was March 27, 1998. Thus, the record shows that, contrary to plaintiffs' suggestion, the notices of noncompliance and notices of hearing were sent on different dates. Our review of these sections does not support plaintiffs' claim that the notices cannot be issued simultaneously. We therefore reject this argument.

■ Finally, plaintiffs assert that the Commission's actions were *ultra vires* because at the time the notices of noncompliance were issued to plaintiffs, Opussum Grape, Inc. (Opussum Grape), was the licensed corporation registered with the Illinois Department of Labor as the operator of the locations at issue. Thus, plaintiffs conclude the permits issued to Opussum Grape evidence that it, and not plaintiffs, was the operator and, therefore, the "employer" of the persons seeking benefits under the Act. As a result, plaintiffs claim that the Commission failed to adhere to the "ruling" made by the Department of Labor that Opussum Grape was the "employer" under the Act.

As correctly noted by the Commission, the Department of Labor's decision to issue permits to the "operators" of the pertinent amusement facilities is not relevant to the question of who was the "employer" under the Act. Additionally, plaintiffs provide no authority which establishes that a permit issued to an amusement facility by the Department of Labor determines that the same entity is an "employer" under the Act. Thus, the argument is waived under supreme Court Rule 341(e)(7). 177 Ill. 2d R. 341 (e)(7). For the foregoing reasons, we conclude that the trial court properly granted the Commission's cross-motion for summary judgment and properly denied plaintiffs' motion for summary judgment.

The judgment of the trial court is affirmed.

Affirmed.

CAHILL and BURKE, JJ., concur.