831 N.E.2d 648 (2005)
358 Ill. App.3d 247
294 Ill.Dec. 698
In re A.M. and E.M., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
J.T., Respondent-Appellant).
No. 3-04-0946.
Appellate Court of Illinois, Third District.
May 24, 2005.
*650 Dana M. Kelly (Court-appointed), Peoria, for J.T.
Lawrence M. Bauer, Deputy Director, State's Attorneys Appellate Prosecutor, Ottawa, Kevin W. Lyons, State's Attorney, Peoria, Richard T. Leonard, State's Attorneys Appellate Prosecutor, Ottawa, for the People.
Justice BARRY delivered the Opinion of the court:
The State filed a petition alleging that (1) the minors, A.M. and E.M., were neglected because of their mother's conduct; and (2) the children's father was unknown. Later, the court identified the respondent, J.T., as the father. The court found that the children were neglected.
The State then filed a petition asking the trial court to terminate the respondent's parental rights, alleging that the respondent was unfit because of depravity (750 ILCS 50/1(D)(i) (West 2002)). The court found the respondent unfit and terminated his parental rights. On appeal, the respondent argues that (1) the Department of Children and Family Services (DCFS) and Lutheran Social Services (LSS) violated his due process rights by failing to contact him or to complete a social history for him; (2) the trial court erred as a matter of law by finding him unfit because it had not found that he neglected the children; (3) after the respondent rebutted the presumption that he was depraved because of his criminal record, he proved that he was not depraved; and (4) the trial court erred by terminating his parental rights. We affirm.

BACKGROUND
A.M. was born on August 22, 1993, and E.M. was born on September 24, 1994. On August 28, 2002, the State filed a juvenile petition alleging that A.M., E.M., and other children of their mother were neglected because of an injurious environment. In the petition, the State said that the fathers of the children were unknown at that time. The State alleged that the mother phoned the Peoria police, stated that she was going to leave the children, and asked that someone come to her home to care for them. When the police arrived at the home, the children were alone in the residence without running water.
The trial court issued an arraignment order on September 6, 2002, in which the respondent was found to be the putative *651 father of A.M. and E.M. The State served the respondent with process by publication on September 19, 2002. On January 6, 2003, the trial court issued an adjudication order finding the children neglected.
On January 5, 2004, the State filed a petition asking the trial court to terminate the respondent's parental rights concerning A.M. and E.M. The State alleged that the respondent was unfit because of depravity.
At the fitness hearing, the State offered certified copies of the respondent's convictions. The respondent had been convicted of the felonies of burglary in 1995, theft in 1997, and unlawful delivery of a controlled substance on June 10, 2003. He was convicted of the misdemeanors of possession of a controlled substance in 1998 and retail theft in 2000.
The respondent testified about his interactions with his children. He also asserted that he had never been contacted by DCFS or LSS about his children.
The respondent presented evidence to rebut the presumption that he was depraved because of his criminal record. He submitted that he was rehabilitated from his depravity. As evidence of his rehabilitation, he said that he had completed his General Equivalency Diploma on October 4, 1995, while incarcerated in the Peoria County jail. The respondent also tendered copies of certificates he had earned while incarcerated in the Department of Corrections (DOC) for (1) completion of an "Education to Careers Seminar" on October 8, 2003, (2) perfect attendance in the same "Education to Careers Seminar," and (3) "Commercial Custodial Services" on December 15, 2003. He said that he had been appointed the supervisor for the custodial program because he "completed the class with a 3.8 grade point average." He had attended the custodial class daily for six months from 8 a.m. to 3 p.m. The "Education to Careers Seminar" was an "8 to 10-week program" given on Mondays and Wednesdays from 4 to 6:30 p.m.
The respondent stated that he was working on a degree in small business management while he was incarcerated in the DOC. He had signed up for drug abuse and parenting classes, but had been put at the bottom of a waiting list because of his absences caused by court appearances regarding his children. The respondent said that he recently had been approved for work release. He stated that he was scheduled to be released from DOC custody in March 2006. At the conclusion of the hearing, the trial court found that the State had proved the respondent unfit by clear and convincing evidence.
The matter proceeded to the best interest hearing on December 8, 2004. The trial judge stated that he had considered the best interest report prepared by LSS. In the report, LSS said that A.M. and E.M. had been in several different foster homes because of their behavioral problems at school and in the homes. LSS had not yet been able to find adoptive homes for the children because of their behavioral problems.
In the report, LSS stated that returning the children to their mother was not in the children's best interest because of her noncompliance with service plans and other court-ordered tasks. Placement with the respondent was not in the children's best interest because of the respondent's incarceration until March 2006. LSS submitted that the children were "in desperate need of a permanent, stable home." Therefore, LSS recommended the termination of both parents' rights and adoption for the children.
At the best interest hearing, the State did not present evidence beyond the LSS report. Tera Boettcher, the LSS caseworker, *652 testified for the mother. Boettcher stated that LSS did not have an adoptive home arranged for the children. LSS was attempting to find an alternative placement for the children, such as placement with the mother's aunt or the respondent's aunt. Boettcher said that she had spoken to the children about these possible placements. A.M. had frequently asked about placement with the mother's aunt, but was not "particular" about placement with either aunt.
The respondent did not present any evidence at the best interest hearing. After hearing closing arguments, the trial court found that it was in the best interest of the children to terminate the respondent's parental rights. The court stated that even though an adoptive home was not yet available for the children, they deserved "stability, continuity, [and] reliability," which the respondent could not provide because of his repeated incarcerations. The respondent appealed.

ANALYSIS

I. Due Process
The respondent contends that DCFS and LSS violated his due process rights by failing to contact him or to complete a social history for him. He argues, therefore, that the trial court erred in finding him unfit and terminating his parental rights. The respondent, however, has not provided citation to relevant authority for this argument.
Bare contentions advanced without citation to relevant authority do not merit consideration on appeal. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001; Eisenberg v. Industrial Comm'n of Illinois, 337 Ill.App.3d 373, 271 Ill.Dec. 811, 785 N.E.2d 1005 (2003).
In this case, the respondent has not cited relevant authority for this argument. Therefore, we need not consider it.

II. Fitness

A. No Finding That Respondent Neglected Children
The respondent submits that the trial court erred as a matter of law by finding him unfit because it had not found that he neglected the children.
The respondent relies upon this court's ruling in In re Cheyenne S., 351 Ill.App.3d 1042, 287 Ill.Dec. 383, 815 N.E.2d 1186 (2004). In Cheyenne S., the trial court made two neglect adjudications. The first finding of neglect concerned only the parent who was not the respondent. In the second neglect adjudication, the trial court found that the respondent neglected the child because the respondent allowed the other parent in the car with the child after the court had ordered the respondent to obtain an order of protection against the other parent. The respondent's parental rights were later terminated.
On appeal, we stated that the State's termination petition in Cheyenne S. could not be based on either of the two findings of neglect. We said that "common sense dictates * * * that the State cannot file a termination petition alleging that a parent is unfit before the parent that is the subject of the termination petition has been found to have abused or neglected the child in question." Cheyenne S., 351 Ill.App.3d at 1050, 287 Ill.Dec. 383, 815 N.E.2d at 1192. We held that because the adjudications of neglect concerned the parent that was not the respondent, the State's evidence failed to prove that the respondent was an unfit parent as a matter of law.
A few days after we issued Cheyenne S., the Illinois Supreme Court issued its opinion in In re Arthur H., 212 Ill.2d 441, 289 *653 Ill.Dec. 238, 819 N.E.2d 734 (2004). In Arthur H., our supreme court stated that "the only question to be resolved at an adjudicatory hearing is whether or not a child is neglected, and not whether every parent is neglectful." Arthur H., 212 Ill.2d at 467, 289 Ill.Dec. 238, 819 N.E.2d at 749.
The Illinois Appellate Court is bound by the principle of stare decisis, and therefore we must adhere to the decisions of the Illinois Supreme Court. King v. Northern Indiana Commuter Transportation District, 337 Ill.App.3d 52, 271 Ill.Dec. 384, 785 N.E.2d 35 (2003). As a result, we must apply the rule of Arthur H. to this case.
Resolution of the respondent's argument also requires an examination of the statutory procedures for termination. Under the Juvenile Court Act of 1987(Act) (705 ILCS 405/1-1 (West 2002)), a person, agency, or association may file a petition alleging that a child is neglected. 705 ILCS 405/2-13(1), (2) (West 2002). At an adjudicatory hearing, the court is to determine if the minor is neglected. 705 ILCS 405/2-21(1) (West 2002). If the court determines that the child is neglected, the matter proceeds to a dispositional hearing. 705 ILCS 405/2-21(2), 2-22 (West 2002). After the dispositional hearing, the court issues a dispositional order. 705 ILCS 405/2-23 (West 2002).
At any time after entry of the dispositional order, the original neglect petitioner may request the termination of a parent's rights. 705 ILCS 405/2-13(4) (West 2002). The matter then proceeds to a hearing to determine if the parent is unfit. 705 ILCS 405/2-29(2) (West 2002). If the parent is found unfit, the cause proceeds to a hearing to decide if it is in the child's best interest to terminate the parent's rights. 705 ILCS 405/2-29(2) (West 2002).
In the present case, under Arthur H., the trial court was not to determine at the adjudicatory hearing whether the respondent was neglectful, but rather, whether the respondent's children were neglected. The court determined that A.M. and E.M. were neglected. After the State filed its petition to terminate the respondent's rights, the trial court found the respondent unfit. Under Arthur H. and the procedures set forth in the Act, a finding that the respondent neglected the children was not a prerequisite to the trial court finding the respondent unfit. Therefore, the respondent is incorrect that the trial court erred as a matter of law by finding him unfit because it had not found that he neglected the children.

B. Depravity
The respondent claims that after he rebutted the presumption that he was depraved because of his criminal record, he proved that he was not depraved. He argues, therefore, that the trial court erred by finding him unfit.
In the trial court, the State must prove its basis for a parent's unfitness by clear and convincing evidence. In re B.R., 282 Ill.App.3d 665, 218 Ill.Dec. 404, 669 N.E.2d 347 (1996). Appellate courts must give great deference to a trial court's finding of unfitness and must not reverse such a finding unless it is against the manifest weight of the evidence. A finding is against the manifest weight of the evidence only if the opposite conclusion is readily apparent. In re J.A., 316 Ill.App.3d 553, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000).
One of the grounds for unfitness is depravity. 750 ILCS 50/1(D)(i) (West 2002). The depravity statute states that "[t]here is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies *654 * * * and at least one of these convictions took place within 5 years of the filing of the petition * * * seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2002).
"A rebuttable presumption creates `a prima facie case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption.' [Citation.] However, once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed. [Citation.] The burden of proof does not shift but remains with the party who initially had the benefit of the presumption. [Citation.] The only effect of the rebuttable presumption is to create the necessity of evidence to meet the prima facie case created thereby, and which, if no proof to the contrary is offered, will prevail. [Citation.]" J.A., 316 Ill.App.3d at 562-63, 249 Ill.Dec. 484, 736 N.E.2d at 686.
The Illinois Supreme Court has defined "depravity" as "an inherent deficiency of moral sense and rectitude." Stalder v. Stone, 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952). Depravity must be shown to exist at the time of the petition to terminate parental rights, and "the `acts constituting depravity * * * must be of sufficient duration and of sufficient repetition to establish a "deficiency" in moral sense and either an inability or an unwillingness to conform to accepted morality.' [Citation.]" J.A., 316 Ill.App.3d at 561, 249 Ill.Dec. 484, 736 N.E.2d at 685. Where the presumption of depravity is rebuttable, the "parent is still able to present evidence showing that, despite his convictions, he is not depraved." J.A., 316 Ill.App.3d at 562, 249 Ill.Dec. 484, 736 N.E.2d at 686.
In the instant case, the State presented certified copies of the respondent's convictions for two misdemeanors and three felonies. One of the felony convictions was within five years of the filing of the termination petition. Therefore, under section 1(D)(i), the State's evidence created a rebuttable presumption that the respondent was depraved.
The respondent offered evidence that he was not depraved. Under the analysis in J.A. concerning rebuttable presumptions, once the respondent's evidence came into the case, the presumption of depravity ceased to exist. The burden remained with the State to prove by clear and convincing evidence that the respondent was unfit because of depravity. The respondent could attempt to prove that he was not depraved.
As noted above, the State's evidence consisted of the respondent's convictions for two misdemeanors and three felonies in 1995, 1997, 1998, 2000, and 2003. These convictions showed clear and convincing evidence of the respondent's inherent deficiency of moral sense and rectitude. See Stalder, 412 Ill. 488, 107 N.E.2d 696. The evidence proved that the respondent's depravity existed at the time the termination petition was filed, and that the acts constituting his depravity were of sufficient duration and of sufficient repetition to establish a deficiency in the respondent's moral sense and either an inability or an unwillingness of the respondent to conform to accepted morality. See J.A., 316 Ill.App.3d 553, 249 Ill.Dec. 484, 736 N.E.2d 678.
As evidence that the respondent was not depraved, he offered the completion of his GED in 1995. However, he committed two misdemeanors and two felonies after obtaining his GED. While commendable, the *655 completion of the respondent's GED did not show that he was no longer depraved.
After the respondent's last felony conviction in 2003, he obtained certificates for (1) the "Education to Careers Seminar," (2) perfect attendance in the seminar, and (3) "Commercial Custodial Services." However, completion of classes in prison, while also commendable, does not show rehabilitation. See In re Shanna W., 343 Ill.App.3d 1155, 279 Ill.Dec. 40, 799 N.E.2d 843 (2003).
The respondent had enrolled in parenting and drug abuse classes. He also had been approved for work release. Again, these efforts are commendable. However, because the respondent had not yet begun any of these programs, these facts could not be considered as proof that he was no longer depraved.
In summary, after the respondent's evidence entered the case and the rebuttable presumption of depravity ceased to exist, the burden remained with the State to prove by clear and convincing evidence that the respondent was depraved. The State's evidence was clear and convincing, and the respondent failed to prove that he was no longer depraved. Therefore, we hold that it was not against the manifest weight of the evidence for the trial court to find that the respondent was unfit because of depravity.

III. Best Interest
The respondent submits that the trial court erred by finding that it was in his children's best interest to terminate his parental rights.
Once the trial court has found the parent to be unfit, all considerations must yield to the best interest of the child. In re G.L., 329 Ill.App.3d 18, 263 Ill.Dec. 607, 768 N.E.2d 367 (2002). In determining a child's best interest, the trial court shall consider (1) the physical safety and welfare of the child; and (2) the child's need for permanence, including stability and continuity of relationships with parental figures. 705 ILCS 405/1-3(4.05)(a), (g) (West 2002). The termination of a parent's rights based on a child's best interest will not be reversed absent an abuse of the trial court's discretion. In re V.O., 284 Ill.App.3d 686, 220 Ill.Dec. 527, 673 N.E.2d 439 (1996).
In this case, the trial court considered statutory factors in determining the best interest of A.M. and E.M. The evidence showed that the respondent did not provide for the children's safety or welfare for most of their lives because he could not provide an adequate home for them while he was repeatedly incarcerated. The children deserved the kind of permanence and stability that the respondent had failed to give them during most of their lives, and that he could not provide until March 2006, at the earliest.
We rule that the trial court did not abuse its discretion by terminating the respondent's parental rights regarding A.M. and E.M.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the Peoria County circuit court finding the respondent to be unfit and terminating his parental rights concerning A.M. and E.M.
Affirmed.
SLATER, P.J. concurring and McDADE, J. specially concurring.
Justice McDADE, specially concurring:
The children A.M. and E.M. are currently nearing 12 and 11 years respectively. They have been found neglected and have lived apart from both parents for the past three years. Because of serious behavioral problems, they have been placed in a *656 succession of foster homes. They are, according to Lutheran Social Services, in "desperate need" of stable, permanent homes with reliable and nurturing care-givers. No adoptive families have yet been identified. The respondent father in this case is presently incarcerated in the Illinois Department of Corrections and is not scheduled for full release until March 2006. He is plainly unable to physically parent his children for at least another year and his evidence demonstrates that although he has signed up for parenting classes, he has not yet studied parenting skills. In these circumstances, I believe the finding of unfitness and the termination of respondent's parental rights as being in the children's best interest are justifiable.
I write separately because I cannot agree with our depravity analysis. In this case, the State initially relied on the rebuttable presumption of depravity created by statute. 750 ILCS 50/1(D)(i) (West 2002). Procedurally, as the order explains, the presumption is sufficient, standing alone, to establish depravity and thus unfitness  but only if the respondent produces no evidence opposing the presumption. If opposing evidence is produced, the burden of proof remains on the State.
That burden is to prove, by clear and convincing evidence, that (1) respondent's acts constituting depravity are of sufficient duration and repetition to establish deficiency in moral sense and (2) either an inability or an unwillingness to conform to accepted morality. In re J.A., 316 Ill.App.3d 553, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000). It thus appears to me that once the respondent has produced opposing evidence, the simple recitation of his criminal history is no longer sufficient to prove depravity. The State must also prove inability or unwillingness to conform to accepted morality. If, indeed, all the State must do to meet its burden is simply to reiterate the criminal history which originally triggered the rebuttable presumption, the presumption is in reality an irrebuttable one. It seems to me that the State's burden is to show that, despite respondent's counter evidence, he is still unable or unwilling to conform his behavior to accepted morality.
The crimes of which respondent was convicted were burglary (felony 1995), theft (felony 1997), retail theft (misdemeanor 2000), unlawful delivery of a controlled substance (felony 2003), and possession of a controlled substance (misdemeanor 1997). His evidence established that during his current incarceration he had completed an 8-10 week "Education to Careers Seminar" with perfect attendance and a six-month "Commercial Custodial Services" class that he had finished with a 3.8 grade point average. Because of his superior grades, he was appointed supervisor for the custodial program. He was also working on a degree in small business management and had recently been approved for work release. In contrast to the securing of his G.E.D. in 1995, respondent's recent achievements demonstrate (1) efforts to position himself for gainful employment  perhaps even starting his own business  upon his release and (2) serious effort to succeed in the classes, as shown by his attendance and his grades. Viewed in terms of the test for depravity, his evidence tends to support a conclusion that he is both willing and developing the ability to conform his behavior to accepted morality  to earn an honest living rather than resorting to crime.
For all of these reasons, I do not believe the State has sustained its burden of proving, *657 by clear and convincing evidence, that respondent is unfit by reason of depravity.