SECOND DIVISION
April 27, 2010

No. 1-09-1759

ROBERT F. KEATING, JR.,                                )     Appeal from
                                                       )     the Circuit Court
            Plaintiff-Appellant,                       )      of Cook County.
                                                       )
      v.                                               )
                                                       )
68TH AND PAXTON, L.L.C., an Illinois L.L.C.,           )
and DAVID L. OGLESBY and BOBBIE OGLESBY,               )
jointly d/b/a OGLESBY MANAGEMENT                       )
COMPANY, an Unincorporated Entity,                     )     No. 07 L 002863
                                                       )
            Defendants-Appellees                       )
                                                       )
(Gonzon Construction Co., Inc., an Illinois Corporation )
and Victor Gonzon, Individually, d/b/a Gonzon          )
Construction,                                          )     Honorable
                                                       )     Thomas Quinn,
            Defendants).                                )     Judge Presiding.

      JUSTICE THEIS delivered the opinion of the court:

      This case arises out of injuries sustained by plaintiff Robert Keating while repairing a

porch at an apartment building owned by defendant 68th & Paxton, L.L.C., and managed by

defendant Oglesby Management Company (OMC) (collectively, defendants).  Plaintiff filed

premises liability claims against defendants in circuit court.  In his fourth amended complaint,

plaintiff added allegations that defendants knowingly failed to provide him with workers'

compensation insurance as required by section 4(d) of the Workers' Compensation Act (Act)

(820 ILCS 305/4(d) (West 2006)); therefore, defendants were presumed liable for his injuries.

1-09-1759

On defendants' motion, the circuit court struck the allegations pertaining to the Act for lack of subject matter jurisdiction. The court then granted summary judgment for defendants on plaintiff's premises liability claims. Plaintiff now appeals from the circuit courts' orders. For the following reasons, we affirm.

68th & Paxton owns a three-floor residential apartment building at 6755 S. Paxton Street. OMC manages the building through David and Bobbie Oglesby. OMC sought to replace the wooden porches at the building. It hired Gonzon Construction, Inc. (GCI), owned by Victor Gonzon, to perform the demolition and reconstruction of the porches. GCI in turn hired plaintiff to perform the demolition. On March 1, 2007, plaintiff fell from the third-floor porch at the apartment building and landed on a fence below, suffering severe injuries.

Plaintiff sued for damages in the circuit court. In counts I and II of his third amended complaint, plaintiff asserted negligence claims against GCI and Gonzon, respectively. In counts III and V, plaintiff asserted premises liability claims against 68th & Paxton and OMC, respectively. In count IV, plaintiff asserted a negligence claim against David Oglesby individually, which he later voluntarily dismissed.

Following the discovery period, defendants filed a motion for summary judgment, arguing that plaintiff failed to establish that any alleged breach of duty by defendants was the proximate cause of his injuries.[1] In support of their motion, defendants relied in part upon plaintiff's deposition. Plaintiff testified that he had been working for Victor Gonzon for about

---

[1] GCI and Gonzon unsuccessfully moved for summary judgment on the claims against them. They are not parties to the instant appeal.

18 months demolishing porches, including the one at defendants' apartment building. He testified that he was not a foreman, but that he had the most experience of the workers. Plaintiff testified that he demolished the wooden rails and pickets that surround the perimeter of a porch. Based on the photographic exhibits, the porches have two rails, oriented horizontally, that are attached at both ends to a support post. There are also many pickets, oriented vertically and several inches apart, that are attached to the top and bottom rails.

According to plaintiff, the pickets are usually attached to the rails on the outside of the porch. Plaintiff described his general technique in demolishing a porch as follows:

> "There's a top rail and a bottom rail. *** I usually hit the bottom with the hammer. *** I hit the picket off the bottom rail first. And I hit – then I hit the top rail, the picket off the top, put my hand on it and give it a whack. And then I throw the picket[s] down one at a time. If they're real sturdy, then what will happen, when I hit the picket at the top, the top rail might come loose. Then I will have to take it off from the section. But most of the time I just take a picket and knock them. Knock them at the bottom, knock them at the top, put them in a pile. *** Take the top rail off, take the bottom rail off, go onto the next section. *** [T]he picket is on the outside [of the porch]. *** [T]he bottom rail is on the inside [of the porch]."

However, plaintiff stated that the pickets on the porch at defendants' apartment building were attached to the rails on the inside of the porch. He stated that he would take the porch apart differently under these circumstances. Specifically:

"[I]n a case like this I wouldn't take the pickets out. *** I would take it and I would remove the top rail first. *** And pull the thing down so it's on the deck. *** And then remove the bottom rail. *** And then pull the whole thing off in one piece, and then knock the pickets off.

Q. Okay. And then after you would do that, would there be nothing?

A. There would be nothing there."

He later reiterated that he would not strike the pickets while they were attached to the rails on the inside of the porch because in that case, he would have to "lean over the rail to get to them. And that's a lot of work. *** [I]f you just knock them – knock it down and lean it up against the wall, you can smack the pickets out."

He also testified that the rails on the porch at defendants' apartment building were "screwed together," rather than nailed, which meant that he had to "whack it harder." He testified that the rails may have been screwed together because the wood was "bad." In fact, he indicated in a photograph that the wooden posts were rotten and that may have been the reason that the rails and posts were screwed together. He described the porch at defendants' building as being in "bad shape." He recognized that it had been "patched" in places where the porch had been previously repaired. Nevertheless, he acknowledged that "when I go out to a job site *** the guy is buying a new porch, it is not because the old one is good."

About an hour after starting work, plaintiff fell from the porch and impaled himself on a wrought iron fence post below. He testified that he did not know how he had fallen. He stated:

"I remember having the hammer in my hand. *** I remember hitting one picket, and that's all I remember for the whole rest of the day. The next thing I remember is two days later I woke up in the hospital. *** I can't really tell you how I fell."

When shown a photograph of the accident site, he could not identify from where he had fallen. He also could not remember what direction his body was facing when he fell, or whether his feet had come out from under him before he fell. Although other workers were present on the day of the accident, plaintiff did not know whether anyone had witnessed his fall.

Plaintiff did not know if he was holding onto the railing or whether his body was in contact with the railing in any way at the time of the accident. He also did not recall leaning over the railing to remove the pickets. He acknowledged that he may have told some people in the course of conversation that he was leaning over the railing when it collapsed, but admitted that he was only guessing.

Plaintiff also testified that it was raining while he was working and that he had gotten slightly wet. He acknowledged that the wooden porch floor became slippery when wet. However, he did not recall slipping or sliding. Nevertheless, he stated that he had to be more careful than usual to avoid slipping and falling. When asked whether the rain may have contributed to his fall, he replied, "I couldn't tell you. *** I don't remember anything. The only thing I remember is I went there, I had the hammer in my hand, I gave it a whack, and then I was in the hospital." When asked what he took a "whack" at, he replied:

"A. The rail, but I don't remember if it was the top rail, the bottom rail or the picket, I just –

Q. Just some parts of the railing?

A. Yeah."

Chester and Joseph Drapinski also were working at the apartment building on the day of the accident. However, neither of them saw plaintiff fall from the balcony. They had their backs toward plaintiff as they worked.

In response to the summary judgment motion, plaintiff admitted that there was no direct evidence of the cause of his injury. However, he argued that there was circumstantial evidence to support his contention that regardless of whether he was leaning on the rail or slipped and fell into the rail, the rail itself failed to protect him from falling off of the porch because it was improperly attached to the support post. To support his contention, he relies on three pieces of evidence: (1) a 2004 building inspection report; (2) the affidavit of a construction administration expert; and (3) an excerpt from Gonzon's deposition. The building inspection report, prepared for David Oglesby in 2004, stated in relevant part that "numerous structural members of the wood rear porch were improperly/inadequately fastened and were not properly bolted together."

Plaintiff's expert, Christopher Chwedyk, asserted in his affidavit that city building code required a wooden porch rail to be able to withstand 200 pounds of thrust force. Although plaintiff only weighed 175 to 180 pounds, Chwedyk concluded that it was "more likely than not that the reason that the railing detached from the post in the area where plaintiff fell is because it was not adequately or properly attached to support plaintiff's weight coming in contact with it."

Chwedyk did not inspect the accident site, but reviewed photographs of it, as well as the building inspection report and the depositions taken in this case. He was not deposed.

During his examination by plaintiff's attorney, Gonzon testified that he was not on site at the time of plaintiff's accident. He stated that at some time after the accident, he went to the area of the porch from where plaintiff was believed to have fallen. He testified that the top rail was missing and that it had landed on the first floor. He was not asked how he knew it was the same rail that had been on the third-floor porch. He also testified that he did not believe that the rail had broken but, rather, that the screws holding the rail "gave way." He stated that that occurred because the rail was "screwed into rotten wood and [plaintiff] was leaning – [plaintiff's] weight was on the [top] rail." However, he testified that he and plaintiff never discussed the cause of his accident and he was not asked how he knew that plaintiff had leaned against the rail.

While defendants' summary judgment motion was pending, plaintiff filed a fourth amended complaint. He did not add new counts but, rather, he added several paragraphs to the existing negligence claims. The new paragraphs alleged that defendants were "employers" under sections 1 and 3 of the Act (820 ILCS 305/1, 3 (West 2006)) and were obligated to provide plaintiff with workers' compensation insurance. He further alleged that defendants knowingly failed to provide him with insurance. As a result, he alleged that section 4(d) of the Act permitted him to sue defendants in circuit court, where proof of his injuries constituted a rebuttable presumption of liability against defendants.

Defendants then filed a motion to strike those newly added paragraphs pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)). Defendants argued that those allegations were legally insufficient to invoke section 4(d) of the Act because plaintiff failed to allege that the Workers' Compensation Commission made the requisite findings that defendants were statutory employers and that they knowingly failed to provide him with insurance.

Following a hearing, the court granted both of defendants' motions. On the motion to strike, the court found that the Commission had exclusive jurisdiction to determine whether defendants were statutory employers under the Act and whether they knowingly failed to provide plaintiff with insurance. The court also granted defendants' motion for summary judgment on the basis that defendants had no duty to warn plaintiff of the dangerous condition of the porch he was hired to repair because the risk of injury was open and obvious. Plaintiff then appealed from the court's orders.

Plaintiff first argues that the court erred in striking the paragraphs of his complaint related to section 4(d) of the Act. He contends that section 4(d) did not require the Commission to hold a preliminary hearing to determine whether defendants knowingly failed to provide him with insurance before he could file his claim in the circuit court.

Before we address the substance of plaintiff's first argument, we must comment on a procedural aspect of this case. We acknowledge that ordinarily, a challenge to the circuit court's subject matter jurisdiction should be brought as a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619(a)(1) (West 2006)). Scott Wetzel Services v. Regard, 271 Ill. App.

3d 478, 481 (1995). However, given the unique procedural posture of this case, we think that defendants' motion to strike under section 2-615 (735 ILCS 5/2-615 (West 2006)) was proper.

Section 2-615 provides that a pleading or portion thereof may be stricken because it is substantially insufficient in law. 735 ILCS 5/2-615 (West 2006). That is, a motion filed under section 2-615 tests the legal sufficiency of the pleading. Cohen v. McDonald's Corp., 347 Ill. App. 3d 627, 632 (2004). In such a case, the court accepts as true all well-pleaded facts and reasonable inferences to be drawn from those facts and determines whether the allegations are sufficient to state a cause upon which relief may be granted. Cohen, 347 Ill. App. 3d at 632.

On the other hand, a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the pleading and raises defects, defenses, or other affirmative matters that act to defeat the claim. Cohen, 347 Ill. App. 3d at 632. Thus, the issue is whether, after reviewing the pleadings, depositions, and affidavits, there is a genuine issue of material fact that precludes dismissal, or whether dismissal is proper as a matter of law. Cohen, 347 Ill. App. 3d at 632.

Here, defendants challenged plaintiff's ability to invoke section 4(d) of the Act in the circuit court. They did not concede the legal sufficiency of the complaint in its entirety but, rather, argued that certain paragraphs of counts III and V were insufficient to transform an ordinary premises liability claim into a violation under the Act. Additionally, defendants only sought to strike the offending paragraphs from the complaint as a remedy, rather than seeking to dismiss the complaint entirely. For these reasons, defendants correctly sought relief under section 2-615 in this case.

As to the substance of plaintiff's argument, we note that this is a case of first impression in Illinois that requires us to interpret section 4(d) of the Act. Because this is a matter of statutory construction, we apply a *de novo* standard of review. Cassens Transport Co. v. Industrial Comm'n, 218 Ill. 2d 519, 524 (2006). Our primary goal in interpreting the Act is to ascertain and give effect to the intent of the legislature. Cassens, 218 Ill. 2d at 524. In order to make that determination, we must read the statute as a whole and consider all relevant parts of the statute. Cassens, 218 Ill. 2d at 524. Additionally, we must give effect to each word, clause, and sentence of the statute and render no part of it superfluous, meaningless, or void. Cassens, 218 Ill. 2d at 524.

The purpose of the Act is to provide financial protection for injured workers covered by the Act. Cassens, 218 Ill. 2d at 524. The Act was designed to provide prompt and equitable recovery without proof of fault for accidental injuries that occur in the workplace, while also protecting employers from the uncertain exposure of lawsuits brought by employees in civil court. Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund, 333 Ill. App. 3d 543, 551 (2002), citing Mitsuuchi v. City of Chicago, 125 Ill. 2d 489, 494 (1988), quoting Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 180-81 (1978). However, an employer-employee relationship is a prerequisite for an award of benefits under the Act. Roberson v. Industrial Comm'n, 225 Ill. 2d 159, 174 (2007).

Under section 5(a) of the Act, there is no common law or statutory right to recover damages from an employer for injuries sustained by the employee while engaged in the line of duty as an employee. 820 ILCS 305/5(a) (West 2006). Accordingly, the Act provides the

exclusive remedy for employees to recover from their employers following accidental workplace injuries. 820 ILCS 305/5(a) (West 2006); Boelkes v. Harlem Consolidated School District No. 122, 363 Ill. App. 3d 551, 554-55 (2006). To that end, the legislature has determined that "[a]ll questions arising under this Act *** shall, except as otherwise provided, be determined by the [Workers' Compensation] Commission." 820 ILCS 305/18 (West 2006); Cassens, 218 Ill. 2d at 524. Specifically, the Commission has the authority to resolve "[a]ny disputed questions of law or fact" arising under the Act. 820 ILCS 305/19 (West 2006); Roberson, 225 Ill. 2d at 173 ("In workers' compensation cases the Industrial Commission is the ultimate decisionmaker").[2]

With these larger principles in mind, we now turn to the language of section 4 of the Act. Section 4 contains regulations to ensure that employers maintain adequate workers' compensation insurance and pay compensation claims to their employees. 820 ILCS 305/4 (West 2006). In particular, section 4(d) gives the Commission authority to enforce those regulations. It provides in relevant part:

> "[1.] Whenever a panel of 3 Commissioners ***, with due process and
> after a hearing, determines an employer has knowingly failed to provide coverage
> as required by paragraph (a) of this Section, the failure shall be deemed an
> immediate serious danger to public health, safety, and welfare sufficient to justify
> service by the Commission of a work-stop order on such employer, requiring the

---

[2] Effective January 1, 2005, the name of the Industrial Commission was changed to the Illinois Workers' Compensation Commission. Pub. Act 93-0721, eff. January 1, 2005. Accordingly, "[r]eferences in any law *** to the Industrial Commission are deemed, in appropriate contexts, to be references to the Illinois Workers' Compensation Commission for all purposes." 820 ILCS 305/13 (West 2006).

cessation of all business operations of such employer at the place of employment or job site. ***

[2.] Any individual employer *** who knowingly fails to provide coverage as required by paragraph (a) of this Section is guilty of a Class 4 felony. *** The State's Attorney of the county in which the violation occurred, or the Attorney General, *** may, in addition to other remedies provided in this Section, bring an action for an injunction to restrain the violation or to enjoin the operation of any such employer.

[3.] Any individual employer *** who negligently fails to provide coverage as required by paragraph (a) of this Section is guilty of a Class A misdemeanor. ***

***

[5.] Employers who are subject to and who knowingly fail to comply with this Section shall not be entitled to the benefits of this Act during the period of noncompliance, but shall be liable in an action under any other applicable law of this State. *** In the action, proof of the injury shall constitute prima facie evidence of negligence on the part of such employer and the burden shall be on such employer to show freedom of negligence resulting in the injury. ***

* * *

[8.] Upon a finding by the Commission, after reasonable notice and hearing, of the knowing and wilful failure or refusal of an employer to comply

with any of the provisions of paragraph (a) of this Section ***, the Commission

may assess a civil penalty of up to $500 per day for each day of such failure ***."

820 ILCS 305/4(d) (West 2006).

The original text of the excerpt of section 4(d) above does not contain numbered

paragraphs. We included paragraph numbers here for ease of discussion. However, it is worth

noting that the absence of numbered paragraphs is some indication that the legislature intended

for section 4(d) to be read as a whole. See County of Du Page v. Illinois Labor Relations Board,

231 Ill. 2d 593, 604 (2008) (noting that words and phrases of a statute should not be construed in

isolation).

When we read section 4(d) as a whole, together with the Commission's broad grant of

authority under sections 18 and 19, we find that the legislature intended for the Commission to

determine whether employers subject to the Act have failed to comply with its regulations and, if

so, what penalties apply. The opening paragraph of section 4(d) makes clear that its provisions

apply only after a panel of commissioners conducts a hearing in accordance with due process

principles and determines that the employer failed to provide the requisite insurance. 820 ILCS

305/4(d) (West 2006).

Then, if the employer is deemed noncompliant, the Commission still must determine

whether its noncompliance was knowing or negligent for purposes of imposing the appropriate

penalty. 820 ILCS 305/4(d) (West 2006). Under paragraph 3, if the employer is merely

negligent, it is subject to prosecution for a Class A misdemeanor. 820 ILCS 305/4(d) (West

2006). However, if the Commission determines that the employer knowingly failed to provide

insurance as required, then the employer may be prosecuted for a Class 4 felony as described in paragraph 2: the Commission is permitted to enlist the assistance of the State's Attorney or the Attorney General to effect such prosecutions or seek injunctions. 820 ILCS 305/4(d) (West 2006).

In addition to a felony prosecution, an employer who knowingly fails to provide the requisite insurance is subject to other consequences. In particular, paragraph 5 states that employers who knowingly fail to provide adequate insurance are no longer entitled to the benefits and protections of the Act and may be sued in civil court. 820 ILCS 305/4(d) (West 2006). In such an action, proof of injury creates a rebuttable presumption of the employer's liability. 820 ILCS 305/4(d) (West 2006). Although the employer may attempt to disprove its liability, it may not rely on the defense of assumption of the risk, negligence, or that the injury was caused by a fellow employee in doing so. 820 ILCS 305/4(d) (West 2006). Employers also are not entitled to the limitations on damages provided by the Act. See 820 ILCS 305/7, 8, 10, 11 (West 2006). Paragraph 8 also empowers the Commission to assess civil penalties for employers who knowingly and wilfully fail or refuse to comply with section 4(d). 820 ILCS 305/4(d) (West 2006). Nevertheless, these penalties apply only after the Commission first determines that the employer knowingly failed to comply with its requirement to provide adequate insurance. 820 ILCS 305/4(d) (West 2006). Thus, we conclude that claims of an employer's failure to provide workers' compensation insurance must be presented to the Commission for a hearing before an action may be filed in the circuit court under section 4(d) of the Act.

We are not persuaded by plaintiff's argument that the Commission is only required to hold a hearing to make a determination of an employer's noncompliance for the purpose of effectuating the terms of paragraph 1. He claims that because there is no hearing requirement prefacing each paragraph of section 4(d), then the legislature must have intended for the hearing to take place only to obtain the work-stop order provided for in paragraph 1. 820 ILCS 305/4(d) (West 2006). Such an interpretation ignores the basic principles of statutory construction, which require us to consider all relevant parts of the statute as a whole. Cassens, 218 Ill. 2d at 524.

If we nevertheless adopted plaintiff's interpretation, and read each paragraph of section 4(d) as a separate directive to the Commission, several paragraphs of section 4(d) would be rendered meaningless. That result would contravene our duty to give effect to each word, clause, and sentence of the statute and render no part of it superfluous, meaningless, or void. Cassens, 218 Ill. 2d at 524. For example, paragraph 11 provides for the disposition of all fines and penalties collected pursuant to "this paragraph (d)"; it would be meaningless if we did not read it together with paragraph 8, which provides the circumstances under which those fines and penalties may be imposed. Additionally, paragraph 4 discusses "criminal penalties in this subsection (d)"; it would be meaningless if we did not read it together with paragraphs 2 and 3, which describe the circumstances under which an employer becomes subject to criminal prosecutions.

Most importantly, if we adopted plaintiff's interpretation of section 4(d), permitting employees to bypass the Commission to file their claims against employers directly in the circuit court, we would defy the stated purpose of the Act. The Act reflects a legislative balancing of

rights, remedies, and procedures that govern the disposition of employees' workplace injuries. Zimmerman v. Buchheit of Sparta, Inc., 164 Ill. 2d 29, 44 (1994). Employees cannot be permitted to make their own determinations regarding the threshold questions underlying the provisions of section 4(d) – namely, whether there was an employment relationship such that the Act applied under the circumstances; whether the purported employer was required to provide workers' compensation insurance; whether the employer failed to provide insurance; and whether the employer was negligent or deliberate in failing to provide insurance – in order to confer a presumption of liability in their favor and subject employers to uncertain exposure in the circuit court without a hearing by the Commission charged with making those predicate factual determinations in accordance with due process principles. See 820 ILCS 305/18, 19 (West 2006); see also Roberson, 225 Ill. 2d at 173-75 (the Commission determines the threshold question of whether an employment relationship exists under a fact-intensive analysis); Hollywood Trucking, Inc. v. Watters, 385 Ill. App. 3d 237, 245 (2008) (the Commission determines questions related to an employer's potential defenses); Cropmate Co. v. Industrial Comm'n, 313 Ill. App. 3d 290, 294 (2000) (the Commission decides whether one is a "statutory employer" under section 3 of the Act).

Plaintiff also contends that the principles set forth in Employers Mutual Cos. v. Skilling, 163 Ill. 2d 284 (1994), and People v. NL Industries, 152 Ill. 2d 82 (1992), vest the circuit court with jurisdiction superior to that of the Commission. We disagree.

In Skilling, the supreme court was asked to determine the scope of the Commission's and the circuit court's jurisdiction over the interpretation of a workers' compensation insurance policy. Skilling, 163 Ill. 2d at 286. It determined that the circuit court has original jurisdiction

over all justiciable issues under the Illinois Constitution. Skilling, 163 Ill. 2d at 287, citing Ill. Const. 1970, art. VI, §9. However, in enacting the Act, the legislature also vested original jurisdiction over workers' compensation matters with the Commission, giving both forums concurrent jurisdiction. Skilling, 163 Ill. 2d at 287; 820 ILCS 305/18 (West 1992). The court then explained that in order for the Commission to have primary jurisdiction, the legislature must divest the circuit court of its jurisdiction, or the Commission must be able to provide a specialized or technical expertise that would help resolve the controversy. Skilling, 163 Ill. 2d at 288. After analyzing the language of the Act, the court determined that by itself, section 18 of the Act, which grants the Commission the power to determine " '[a]ll questions arising under this Act,' " did not sufficiently divest the circuit court of its original jurisdiction over the interpretation of an insurance contract presented in a declaratory judgment action. Skilling, 163 Ill. 2d at 287, quoting 820 ILCS 305/18 (West 1992); NL Industries, 152 Ill. 2d at 96-97. Additionally, the interpretation of an insurance contract, whatever its subject matter, did not require the expertise of an administrative agency for a proper interpretation; thus, the circuit court retained primary jurisdiction. Skilling, 163 Ill. 2d at 289.

On the other hand, the present case involves questions that are uniquely suited to the expertise of the Commission. As stated above, the Commission is charged with deciding whether an employment relationship existed between the plaintiff and the defendant, whether the defendant was required to provide workers' compensation insurance, and whether the employer knowingly or negligently failed to do so. The Commission must first make those factual determinations in order to decide whether the enforcement provisions of section 4 apply, and if so, which penalties are appropriate. Thus, the legislature demonstrated its clear intent to vest the

Commission with primary jurisdiction superior to that of the circuit court with respect to section 4 of the Act. Therefore, Skilling is distinguishable.

Nor does NL Industries control here. That case also examined the question of whether the legislature sufficiently divested the circuit court of its original jurisdiction to enforce the provisions of the Illinois Environmental Protection Act and bestowed it primarily upon the Pollution Control Board. NL Industries, 152 Ill. 2d at 89-90. The specific language of the statutory provisions at issue in NL Industries alternately indicated that jurisdiction was vested in the Pollution Control Board or the circuit court or both. NL Industries, 152 Ill. 2d at 99. The court concluded that both bodies shared concurrent jurisdiction. However, because the express language of the statute granted jurisdiction in both forums, the legislature did not demonstrate a clear intent to deprive the circuit courts of jurisdiction. NL Industries, 152 Ill. 2d at 99. In addition, the court noted that the Pollution Control Board lacked the power to enforce any of the remedies and, therefore, the legislature could not have intended for jurisdiction to lie with the Board as opposed to the circuit court. NL Industries, 152 Ill. 2d at 100. Thus, the statute's reference to the Pollution Control Board's jurisdiction was merely "an oversight" by the legislature and primary jurisdiction remained with the circuit court. NL Industries, 152 Ill. 2d at 99.

In the present case, unlike NL Industries, there is no inconsistency in the Act with respect to the Commission's jurisdiction and the court's. In fact, the legislature demonstrated a clear intent to vest primary jurisdiction with the Commission because of its specialized knowledge and expertise in deciding the fact-intensive questions of who employers are under the Act, whether an employer-employee relationship existed, whether an employer knowingly or negligently

failed to comply with section 4(d) and, if so, what penalties should apply under the Act. With that said, in certain instances, the legislature specifically reserved to the circuit court jurisdiction over criminal prosecutions and injunctions to be instituted by the state's attorney or the attorney general, and actions to recover amounts owed under the Act to be filed by the Commission itself, where the expertise of the Commission is not required for the enforcement of those particular penalties. 820 ILCS 305/4(d) (West 2006). But see Skilling, 163 Ill. 2d at 289.

Finally, we must address Eisenberg v. Industrial Comm'n, 337 Ill. App. 3d 373 (2003), which is the only case to have addressed the substance of section 4(d). The plaintiffs in Eisenberg were employers who had been fined by the Commission for failing to provide insurance to their employees. They brought a declaratory judgment action in the circuit court against the Commission alleging *inter alia* that the Commission lacked the power to impose the fine against them because it did not first hold a hearing to determine that they were "employers" under the statute. Eisenberg, 337 Ill. App. 3d at 377. We rejected the plaintiffs' argument because the Commission had in fact determined that the plaintiffs were employers during the course of a separate investigation involving violations of the Act. Eisenberg, 337 Ill. App. 3d at 376, 383. We ultimately held that under the unique circumstances of that case, the Commission was not required to conduct a formal hearing to determine the plaintiffs' status as employers. Eisenberg, 337 Ill. App. 3d at 383.

Nevertheless, we concluded that "under section 4(d), the Commission has authority, after notice and a hearing, to determine whether the charged party is an 'employer' and to impose civil penalties upon an 'employer.' " Eisenberg, 337 Ill. App. 3d at 382-83. We reaffirm that conclusion here and, as discussed above, hold that the Commission's jurisdiction in making

those determinations is superior to the circuit court's. See Skilling, 163 Ill. 2d at 288. In this case, plaintiff's attempt to file his claim in the circuit court circumvented the procedural process prescribed by the legislature.

Accordingly, the Commission, and not the circuit court, had jurisdiction to determine whether plaintiff could seek relief under section 4(d) of the Act. Plaintiff did not allege that the Commission made the requisite determinations about the applicability of the Act and defendants' compliance with it that would permit plaintiff to pursue relief in the circuit court under section 4(d). Thus, even taking the factual allegations contained in plaintiff's complaint as true for purposes of evaluating the sufficiency of the complaint, the circuit court lacked the power to evaluate them. Therefore, by themselves, those paragraphs of the complaint were legally insufficient and were properly stricken.

Plaintiff also appeals from the circuit court's order granting summary judgment for defendants on the premises liability claim. Summary judgment is appropriate only where all of the evidence, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 305 (2005). Although the plaintiff need not prove his case at the summary judgment stage, he must present sufficient evidence to create a genuine issue of material fact. Wiedenbeck v. Searle, 385 Ill. App. 3d 289, 292 (2008). We review an order granting summary judgment *de novo*. Wiedenbeck, 385 Ill. App. 3d at 292.

To establish a premises liability negligence claim, the plaintiff must present sufficient factual evidence to establish the existence of a duty of care owed by the defendant to the

plaintiff, a breach of that duty, and an injury proximately caused by that breach. Marshall v. Burger King Corp., 222 Ill. 2d 422, 430 (2006). Whether a duty exists in a particular case is a question of law for the court to decide. Marshall, 222 Ill. 2d at 430. However, whether a defendant breached that duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters. Marshall, 222 Ill. 2d at 430. Nevertheless, if the plaintiff fails to present sufficient evidence to establish proximate cause, then summary judgment is appropriate. Rogers v. Matanda, Inc., 393 Ill. App. 3d 521, 526 (2009).

In this case, although defendants argued in the court below that plaintiff had failed to present any evidence on the element of proximate cause, the circuit court granted summary judgment based on the absence of a duty owed by defendants because of the open and obvious nature of the risk of harm. Here, summary judgment was proper on both elements.

First, plaintiff failed to establish that defendants owed him a duty to warn him of the allegedly dangerous condition on the property. Whether a duty exists is a question of law, but it is also a question of public policy because it requires us to determine whether a plaintiff and a defendant stand in such a relationship to each other that the law imposes on the defendant an obligation of reasonable conduct for the plaintiff's benefit. LaFever v. Kemlite Co., 185 Ill. 2d 380, 388-89 (1998). To make such a determination, we must balance the following four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden on the defendant to guard against the injury; and (4) the consequences of placing the burden on the defendant. LaFever, 185 Ill. 2d at 389. However, it is axiomatic that no legal duty arises unless the harm is reasonably foreseeable. Clifford v. Wharton Business Group, L.L.C., 353 Ill. App. 3d 34, 42 (2004).

We analyze the foreseeability of the injury under section 342 of the Restatement (Second) of Torts, which states in relevant part:

" 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the reasonable exercise of care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.' "

LaFever, 185 Ill. 2d at 389-90, quoting Restatement (Second) of Torts §343, at 215-16 (1965).

Here, we cannot say that any injury to plaintiff caused by the condition of the property was foreseeable under section 342. Plaintiff alleged that defendants should have warned him that "numerous structural members of the wood rear porch were improperly/inadequately fastened and were not properly bolted together," as stated in the 2004 inspection report. However, plaintiff, Gonzon, and Chester Drapinski testified that the porch was in poor condition, that the posts and railings were attached with screws rather than nails, and that some of the screws had been stripped. Additionally, plaintiff testified that the porch had been "patched" in places, where the porch had been previously repaired. Plaintiff also acknowledged that ordinarily, when he is hired to replace a porch, "it is not because the old one is good." Thus, plaintiff and his coworkers hired to replace the porch recognized the extent of the porch's poor

condition and did in fact discover the allegedly dangerous condition that plaintiff now claims was the cause of his injury. Consequently, we cannot say that defendants should have believed that plaintiff, with his experience in porch demolition, would fail to discover that condition or fail to protect himself against it. Accordingly, any injury caused by the condition of the porch was not foreseeable. Therefore, defendants owed plaintiff no duty to warn him of an allegedly dangerous condition in this case and summary judgment was proper. See Clifford, 353 Ill. App. 3d at 42.

Summary judgment was also proper on the element of proximate cause. Assuming that defendants had a duty to warn plaintiff of the allegedly dangerous condition of the porch, plaintiff has not established that their failure to do so was a proximate cause of his injuries.

Proximate cause is an essential element of a negligence claim. Bermudez v. Martinez Trucking, 343 Ill. App. 3d 25, 29 (2003). Generally, proximate cause is a question of fact; however, it becomes a question of law when the facts alleged indicate that a party would never be entitled to recover. Bermudez, 343 Ill. App. 3d at 29-30. Accordingly, if the plaintiff fails to establish the element of proximate cause, he has not sustained his burden of making a *prima facie* case and summary judgment is proper. Mann v. Producer's Chemical Co., 356 Ill. App. 3d 967, 972 (2005); cf. Bermudez, 343 Ill. App. 3d at 30 (directed verdict was appropriate where the plaintiff failed to prove proximate cause in a negligence action).

The party moving for summary judgment need not prove its case or disprove the nonmovant's case. Kellman v. Twin Orchard Country Club, 202 Ill. App. 3d 968, 974 (1990), quoting Waite v. Chicago Transit Authority, 157 Ill. App. 3d 616, 619 (1987). Rather, the movant is entitled to summary judgment where it can demonstrate the absence of a genuine issue

of material fact. <u>Kellman</u>, 202 Ill. App. 3d at 974, quoting <u>Waite</u>, 157 Ill. App. 3d at 619. The non-moving party may defeat a claim for summary judgment by demonstrating that such a question of material fact exists. <u>Adames v. Sheahan</u>, 233 Ill. 2d 276, 296 (2009). Although the non-moving party also need not prove his case at the summary judgment stage, he must come forth with some evidence that arguably would entitle him to recover at trial. <u>Ross v. Dae Julie, Inc.</u>, 341 Ill. App. 3d 1065, 1069 (2003).

To establish proximate cause, the plaintiff bears the burden of " 'affirmatively and positively show[ing]' " that the defendant's alleged negligence caused the injuries for which the plaintiff seeks to recover. <u>Bermudez</u>, 343 Ill. App. 3d at 29, quoting <u>McInturff v. Chicago Title & Trust Co.</u>, 102 Ill. App. 2d 39, 48 (1968). Liability against a defendant cannot be predicated upon speculation, surmise, or conjecture. <u>Mann</u>, 356 Ill. App. 3d at 974, citing <u>Wiegman v. Hitch-Inn Post of Libertyville, Inc.</u>, 308 Ill. App. 3d 789, 795 (1999). Thus, the plaintiff must establish with "reasonable certainty" that the defendant's acts or omissions caused his injury. <u>Mann</u>, 356 Ill. App. 3d at 974.

The plaintiff may establish proximate cause through circumstantial evidence. <u>Mann</u>, 356 Ill. App. 3d at 974. That is, causation may be established by facts and circumstances which, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury. <u>Mann</u>, 356 Ill. App. 3d at 974. It is not necessary that only one conclusion follow from the evidence. <u>Mann</u>, 356 Ill. App. 3d at 974. However, a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn. <u>Wiegman</u>, 308 Ill. App. 3d at 796. That is, where the proven facts demonstrate that the nonexistence of the fact to be

inferred appears to be just as probable as its existence, then the conclusion that exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be permitted to make that inference. Mann, 356 Ill. App. 3d at 974.

Plaintiff argues that his injury occurred when the rail detached from the support post because it was "improperly/inadequately fastened." He acknowledges that there is no direct evidence of proximate cause. However, he argues that the building inspection report, Chwedyk's affidavit, and Gonzon's testimony permit the inference that, regardless of why plaintiff placed any weight on the rail, he was injured because the improperly attached rail came loose from the post and failed to prevent him from falling. Defendants argue that it is just as likely that plaintiff removed the rail himself as it is that the rail detached from the post because it was inadequately fastened.

We agree with defendants. Plaintiff has not "affirmatively and positively shown" with "reasonable certainty" that the rail detached from the post, thereby failing to protect plaintiff from falling. It is undisputed that there is no direct evidence of the cause of plaintiff's fall, and here, plaintiff cannot establish causation through circumstantial evidence. Although a trier of fact could infer from the building inspection report and Chwedyk's affidavit that the rail detached from the post because it did not meet building code standards,[3] it is equally likely that a

---

[3] Plaintiff cannot rely on Gonzon's deposition testimony, in which he testified that the rail "gave way" and landed on the first-floor porch, to create a question of fact because that testimony lacks foundation and would be inadmissible. Wiszowaty v. Baumgard, 257 Ill. App. 3d 812, 819 (1994). Gonzon testified that he was not present at the time of the accident and did not discuss with plaintiff the cause of his accident. He also failed to supply any other basis for his assertion. People v. Nieves, 193 Ill. 2d 513, 537-38 (2000) (testimony that lacks a proper foundation in the form of the witness's personal knowledge of events amounts to no evidence at all). Nevertheless, for the

trier of fact could conclude from plaintiff's own testimony that he removed the rail himself and that is why it did not prevent him from falling. Plaintiff testified that where the pickets were attached to the rail inside the porch, as in this case, he would "remove the top rail first *** [a]nd pull the thing down so it's on the deck *** [a]nd then remove the bottom rail *** [a]nd then pull the whole thing off in one piece, and then knock the pickets off." After he did that, "there would be nothing there" to prevent him from falling off the porch deck.

Therefore, the nonexistence of the fact that the rail detached from the post because of its faulty attachment was just as probable as its existence and the conclusion advocated by plaintiff is merely speculation, surmise, and conjecture. See Mann, 356 Ill. App. 3d at 974; see also Bakkan v. Vondran, 202 Ill. App. 3d 125, 131 (1990). A trier of fact cannot be permitted to make such an inference. See Wiegman, 308 Ill. App. 3d at 795-96. The conclusion that the rail detached rather than having been removed by plaintiff is merely a possible one, not a probable one. See Wiegman, 308 Ill. App. 3d at 796. Absent this circumstantial evidence of proximate cause, plaintiff has failed to make a *prima facie* case of negligence and summary judgment was proper. See Mann, 356 Ill. App. 3d at 972 .

To be clear, the existence of multiple inferences regarding causation does not create a triable issue of fact in this case. The issue before us is the sufficiency of the evidence on the element of proximate cause in establishing plaintiff's *prima facie* case. Mann, 356 Ill. App. 3d at 978. Plaintiff attempted to establish that element of his claim through circumstantial evidence. However, the inference he attempted to create was speculative and could not be the

---

reasons that follow, even if the testimony were admissible, that would not change the outcome here.

predicate for liability against defendants.  See <u>Mann</u>, 356 Ill. App. 3d at 974.  Thus, we conclude that plaintiff has come forth with no evidence on the element of causation and summary judgment was appropriate.  This is not a case in which the plaintiff and defendant both presented evidence of proximate cause and a jury should be called upon to resolve the dispute.  See <u>Mann</u>, 356 Ill. App. 3d at 974.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.

**ROBERT F. KEATING, JR.,**

       **Plaintiff-Appellant,**

    **v.**

**68TH AND PAXTON, L.L.C., an Illinois L.L.C.,
and DAVID L. OGLESBY and BOBBIE
OGLESBY, jointly d/b/a OGLESBY MANAGEMENT
COMPANY, an Unincorporated Entity,**

       **Defendants-Appellees**

**(Gonzon Construction Co., Inc., an Illinois Corporation
and Victor Gonzon, Individually, d/b/a Gonzon
Construction,**

       **Defendants).**
_____

**No. 1-09-1759**

**Appellate Court of Illinois
First District, Second Division**

**Filed: April 27, 2010**
_____

**JUSTICE THEIS delivered the opinion of the court.**

**Cunningham, P.J., and Hoffman, J., concur.**
_____

**Appeal from the Circuit Court of Cook County
Honorable Thomas Quinn, Judge Presiding**
_____

| For PLAINTIFF-APPELLANT: | Lawrence H. Hyman<br>Cynthia S. Kisser<br>Lawrence H. Hyman & Assoc.<br>111 W. Washington St.,<br>Suite 1025<br>Chicago, Illinois 60602 | For DEFENDANTS-APPELLEES: | Paul S. Festenstein<br>Guy M. Conti<br>Condon & Cook, L.L.C.<br>745 N. Dearborn St.<br>Chicago, Illinois 60654 |