# Illinois Official Reports

## Appellate Court

***American Kitchen Delights, Inc. v. Illinois Workers' Compensation Comm'n**,*
**2020 IL App (1st) 191593WC**

| | |
|---|---|
| Appellate Court Caption | AMERICAN KITCHEN DELIGHTS, INC., Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Jonathan Galindo, Appellee). |
| District & No. | First District, Workers' Compensation Commission Division No. 1-19-1593WC |
| Filed | June 12, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-50818; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Dennis Both, of Harvey, for appellant.<br><br>Eric A. Witter, of Witter Law Offices, LLC, of Chicago, for appellee. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justices Hoffman, Cavanagh, and Barberis concurred in the judgment and opinion. |

¶ 1       Respondent, American Kitchen Delights, Inc., appeals from an order of the circuit court of Cook County that confirmed a decision of the Illinois Workers' Compensation Commission (Commission) finding that respondent knowingly failed to provide workers' compensation coverage as required by the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2018)). We reverse.

¶ 2                                   I. BACKGROUND

¶ 3       On February 26, 2018, claimant, Jonathan Galindo, filed an application for adjustment of claim pursuant to the Act seeking benefits for injuries he allegedly sustained on February 2, 2018, while working for respondent. At some point, claimant's attorney learned that respondent did not have workers' compensation coverage on the date of the alleged accident. Section 4(d) of the Act (820 ILCS 305/4(d) (West 2018)) states that an employer who knowingly fails to provide adequate insurance is not entitled to the benefits and protections of the Act and may be sued in the circuit court. See *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 466 (2010). However, as a prerequisite to filing a civil action, a claim of an employer's failure to provide workers' compensation insurance must be presented to the Commission for a hearing. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 466. To this end, on April 19, 2018, claimant filed a motion for a preliminary hearing pursuant to section 4(d) of the Act (820 ILCS 305/4(d) (West 2018)), alleging that respondent knowingly failed to have workers' compensation insurance on the date of the alleged accident. In its response to claimant's motion, respondent acknowledged that it did not have workers' compensation coverage on the date of the alleged accident but asserted that claimant failed to present sufficient proof that it knowingly failed to comply with the Act's insurance mandate.

¶ 4       The matter proceeded to a hearing on June 1, 2018, before Commissioner Michael Brennan. The only witness to testify at the section 4(d) hearing was Shahnawaz Hasan, respondent's founder and president. Hasan testified that respondent is a food manufacturing company located in Harvey. Hasan received claimant's application for adjustment of claim sometime in March 2018. Around the same time, claimant's attorney spoke to Hasan about the claim and respondent's lack of workers' compensation insurance. Hasan confirmed that claimant worked for respondent, although he could not state with certainty that claimant had been employed on February 2, 2018. Claimant's attorney offered into evidence a copy of one of claimant's paychecks from respondent. Hasan confirmed that the paycheck covered the pay period between January 21, 2018, and February 3, 2018.

¶ 5       Hasan acknowledged that under Illinois law respondent is required to have workers' compensation insurance. Hasan testified that respondent has been in business for 32 years and, during that time, it has complied with all applicable federal and state insurance requirements. For the past three or four years, respondent's workers' compensation carrier has been FCCI Insurance Company (FCCI). The FCCI policy was purchased through an insurance broker. Hasan identified claimant's exhibit No. 5 as a "Notice of Cancellation, Nonrenewal, or Declination" (Nonrenewal Notice) pertaining to policy No. WC00002490-4, respondent's workers' compensation insurance policy with FCCI. The Nonrenewal Notice stated that respondent's workers' compensation policy expired on December 31, 2017, and would not be renewed because of respondent's "loss history." Hasan confirmed that the address listed on the

Nonrenewal Notice is respondent's business address in Harvey. The Nonrenewal Notice states that it was mailed on October 30, 2017, but Hasan could not recall receiving it. Hasan noted that, although he is the president of the company, he does not handle all aspects of the business's daily operations, such as receiving the mail.

¶ 6 Hasan testified that the process for insurance renewals is long and detailed. Respondent's insurance broker typically contacts the company in September to initiate the renewal process. At that time, respondent provides the broker with information regarding its loss history, sales projections, and labor costs. Using this information, the broker shops for quotes from various insurance companies, including the existing one. Hasan usually writes a check for the renewal premiums in March. Hasan could not recall respondent's insurance broker telling him in September 2017 that the workers' compensation policy would not be renewed. To the contrary, Hasan testified that, as late as April or May 2018, he "assumed" that respondent had workers' compensation coverage because several of respondent's other insurance policies had been cancelled and reinstated. In this regard, Hasan testified that respondent received an invoice from FCCI dated May 17, 2018. Respondent paid the invoice. Thereafter, respondent received rescission notices informing it that notices of cancellation previously issued with respect to respondent's "commercial package," "commercial auto," and "umbrella" insurance policies had been rescinded effective May 23, 2018. Upon receiving the rescission notices, Hasan contacted respondent's insurance broker, who confirmed that the workers' compensation policy had not been renewed. It was then that Hasan became aware that respondent did not have workers' compensation insurance. At that point, Hasan instructed the insurance broker to start looking for a new workers' compensation insurance carrier. Hasan confirmed that as of June 1, 2018, the date of the section 4(d) hearing, respondent did not have workers' compensation insurance.

¶ 7 Claimant offered into evidence an e-mail dated April 12, 2018, which his lawyer had received from respondent's attorney. In the e-mail, respondent's attorney stated that she had been informed that respondent did not have workers' compensation coverage on the date of claimant's alleged accident. Hasan acknowledged the e-mail, stating:

> "Yeah, that's what we had assumed from what was going on, but I needed confirmation of the fact that why would the insurance agent issue three policies and not the fourth one. So we needed in writing from the insurance company that in fact that is happening, and that was not some kind of a mistake or misunderstanding on our part."

Hasan testified that he did not receive "[d]efinitive confirmation" in writing that respondent did not have workers' compensation coverage until May 21, 2018.

¶ 8 On November 9, 2018, a three-member panel of the Commission entered an order finding that an employment relationship existed between claimant and respondent, that respondent was required to provide workers' compensation insurance to its employees, and that respondent knowingly failed to provide workers' compensation coverage on the date of claimant's alleged accident. Regarding the latter finding, the Commission rejected any implication that the lapse of insurance was inadvertent and unknown. The Commission explained as follows:

> "The evidence demonstrates that as early as October 30, 2017, notice was sent to Respondent regarding the non-renewal of the workers' compensation policy, effective December 31, 2017. Respondent, by its own admission, had also received notice of [claimant's] pending workers' compensation claim, which had been filed with the Illinois Workers' Compensation Commission on February 26, 2018. Also, by

- 3 -

Respondent's own admission, that by April 2018, Respondent's assumption was that it no longer had a workers' compensation policy of insurance, but wanted written confirmation of the cancellation, which was received in May 2018. Nonetheless, as of the June 1, 2018 hearing, Respondent remained without workers' compensation coverage.

None of Respondent's explanations offer any justification for its failure to secure a workers' compensation policy in full force and effect on the alleged accident date of February 2, 2018, as required under the Act. Respondent's lack of memory in terms of receiving notice, ignorance in the matter at hand, or internal procedures, does not relieve it of its legal obligation to provide workers' compensation insurance."

¶ 9 Respondent sought judicial review of the Commission's decision in the circuit court of Cook County. In an order dated August 1, 2019, the circuit court confirmed the decision of the Commission. This appeal by respondent ensued.

¶ 10                                      II. ANALYSIS

¶ 11 On appeal, respondent raises three issues. First, respondent argues that the Commission improperly determined that it knowingly failed to provide workers' compensation insurance for purposes of section 4(d) of the Act (820 ILCS 305/4(d) (West 2018)). Second, respondent claims that the Commission improperly considered "incompetent, after the fact evidence" in finding that it knowingly failed to provide workers' compensation insurance. Finally, respondent maintains that a heightened standard of proof should be applied to a finding under section 4(d) of the Act (820 ILCS 305/4(d) (West 2018)) that an employer knowingly failed to provide workers' compensation insurance. We find respondent's first contention dispositive and reverse on that basis.

¶ 12 Section 4 of the Act contains regulations to ensure that employers maintain adequate workers' compensation insurance and pay compensation claims to their employees. 820 ILCS 305/4 (West 2018); *Keating*, 401 Ill. App. 3d at 464. In turn, section 4(d) empowers the Commission to enforce those regulations. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 464. Specifically, section 4(d) authorizes the Commission, after conducting a hearing in accordance with due process principles, to determine whether an employer failed to provide the requisite insurance. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 465. If the employer is deemed noncompliant, the Commission must determine whether that noncompliance was knowing or negligent. 820 ILCS 305/4(d) (West 2018).

¶ 13 An employer who is found to have negligently failed to provide adequate workers' compensation insurance is subject to prosecution by the state's attorney or the attorney general for a Class A misdemeanor. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 466. However, a finding that an employer's failure to provide workers' compensation insurance was knowing carries far more serious consequences. A knowing failure to provide adequate insurance is deemed "an immediate serious danger to public health, safety, and welfare sufficient to justify service by the Commission of a work-stop order on such employer, requiring the cessation of all business operations." 820 ILCS 305/4(d) (West 2018). In addition, an employer who is found to have knowingly failed to provide workers' compensation insurance is subject to prosecution by the state's attorney or attorney general for a Class 4 felony. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 466. Moreover, as noted previously, an employer who knowingly fails to provide adequate insurance is not

entitled to the benefits and protections of the Act and may be sued in civil court. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 466. In such an action, proof of injury creates a rebuttable presumption of the employer's liability. 820 ILCS 305/4(d) (West 2018). An employer may attempt to disprove liability but may not rely on the defenses of assumption of the risk or negligence or on a claim that the injury was caused by a fellow employee. 820 ILCS 305/4(d) (West 2018); *Keating*, 401 Ill. App. 3d at 466. Section 4(d) also authorizes the Commission to impose civil penalties against an employer who knowingly and willfully fails or refuses to comply with the Act's insurance mandate. 820 ILCS 305/4(d) (West 2018).

¶ 14    Here, the Commission determined that respondent knowingly failed to provide workers' compensation insurance. In so finding, the Commission stated that "as early as October 30, 2017, notice was sent to Respondent regarding the non-renewal of the workers' compensation policy, effective December 31, 2017." The Commission did not elaborate upon the basis for this conclusion. Its statement appears to be a reference to the Nonrenewal Notice introduced by claimant, which indicates that it was mailed to respondent on October 30, 2017. Notice of an insurer's intention not to renew a workers' compensation policy is governed by section 143.17a of the Illinois Insurance Code (215 ILCS 5/143.17a (West 2016)). See *West Bend Mutual Insurance Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 670 (7th Cir. 2015) (discussing section 143.17a of the Insurance Code in the context of workers' compensation insurance). On the date FCCI purportedly mailed the Nonrenewal Notice to respondent, section 143.17a stated in relevant part as follows:

> "(a) A company intending to nonrenew any policy of insurance to which Section 143.11 applies, except for those defined in subsections (a), (b), (c), and (h) of Section 143.13, must mail written notice to the named insured at least 60 days prior to the expiration date of the current policy. In all notices of intention not to renew any policy of insurance, as defined in Section 143.11, the company shall provide a specific explanation of the reasons for nonrenewal. ***
>
> * * *
>
> (d) *Under subsection (a), the company shall maintain proof of mailing of the notice of intention not to renew to the named insured on one of the following forms: a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service.* *** For all notice requirements under this Section, an exact and unaltered copy of the notice to the named insured shall also be sent to the named insured's producer, if known, or the producer of record." (Emphasis added.) 215 ILCS 5/143.17a (West 2016).

Thus, under section 143.17a of the Insurance Code, the only method for establishing compliance with the notice requirement is proof of mailing by the insurer. See *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 351 (1998) (noting that, where the legislature has provided a method for establishing compliance with a notice requirement, allowing other methods would circumvent the language and purpose of the statute).

¶ 15    Turning to the case at bar, although claimant obtained and introduced into evidence the Nonrenewal Notice itself, claimant did not produce proof of mailing of the Nonrenewal Notice by FCCI on "a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service." 215 ILCS 5/143.17a(d) (West 2016). Absent evidence of proof of mailing of the Nonrenewal Notice in accordance with section 143.17a, we hold that the record was insufficient, as a matter of law, to support the Commission's

finding that the Nonrenewal Notice was sent to respondent "as early as October 30, 2017." See *Ragan*, 183 Ill. 2d at 351-52 (holding that envelope, which allegedly contained a cancellation notice and was metered and imprinted with a mailing date, was insufficient to meet statutory proof-of-mailing requirements under section 143.14(a) of the Insurance Code (215 ILCS 5/143.14(a) (West 1994))); *Guillen v. Potomac Insurance Co. of Illinois*, 323 Ill. App. 3d 121, 130-31 (2001), *aff'd as modified & remanded*, 203 Ill. 2d 141 (2003) (holding that unsigned letter purportedly sent to the insured regarding addition of lead exclusion to policy was insufficient to meet statutory proof-of-mailing requirements under section 143.17a of the Insurance Code). Thus, the Nonrenewal Notice itself, without proof of mailing in accordance with section 143.17a, was insufficient to establish that respondent knowingly failed to provide workers' compensation insurance on the date of claimant's alleged accident.

¶ 16 The Commission cited three additional justifications in support of its conclusion that respondent knowingly failed to provide workers' compensation coverage on the date of claimant's alleged accident. First, the Commission observed that respondent, by its own admission, had received notice of claimant's pending workers' compensation claim, which was filed on February 26, 2018. Second, the Commission noted that, by April 2018, "[r]espondent's assumption was that it no longer had a workers' compensation policy of insurance, but wanted written confirmation of the cancellation [*sic*], which was received in May 2018." Third, the Commission pointed out that, as of the June 1, 2018, hearing, respondent remained without workers' compensation coverage. While we are not prepared to say that there are no circumstances under which an event that postdates the alleged accident would be sufficient to establish that an employer knowingly failed to provide workers' compensation insurance, we are unable to discern how the postaccident events cited by the Commission in this case do so. Neither the fact that respondent was aware of claimant's workers' compensation claim after February 26, 2018, nor the fact that by April 2018 respondent was under the assumption that it did not have workers' compensation coverage sheds any light on what respondent knew or did not know regarding its workers' compensation coverage as of the date of claimant's alleged accident on February 2, 2018. Likewise, while we do not condone the lack of urgency exhibited by respondent in obtaining workers' compensation coverage after it learned that its policy had lapsed, the fact that it still did not have coverage as of June 1, 2018, provides no indication as to what respondent knew about the status of its workers' compensation coverage on February 2, 2018. The Commission therefore erred in relying on these events in support of its finding that respondent's failure to provide workers' compensation insurance on the date of claimant's accident was knowing.

¶ 17                                                      III. CONCLUSION

¶ 18 In short, we conclude that the Commission erred in finding that respondent knowingly failed to comply with the Act's insurance mandate. The evidence presented by claimant was insufficient to support the Commission's finding that the Nonrenewal Notice was sent to respondent as early as October 30, 2017. Moreover, the remaining justifications proffered by the Commission were insufficient to establish what respondent knew about the status of its workers' compensation insurance on the date of claimant's alleged accident. Accordingly, we reverse the judgment of the circuit court of Cook County, which confirmed the decision of the Commission.

¶ 19         Reversed.