# Illinois Official Reports

## Appellate Court

---

### *In re Parentage of K.E.B.*, 2014 IL App (2d) 131332

---

| | |
|---|---|
| Appellate Court Caption | *In re* PARENTAGE OF K.E.B., a Minor (Thomas E.B., Petitioner-Appellee, v. Christine C., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-13-1332 |
| Filed | July 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Pursuant to section 607(c) of the Illinois Marriage and Dissolution of Marriage Act, visitation rights may be modified whenever the best interests of the child would be served, but visitation rights may not be restricted unless the court finds that the visitation would seriously endanger the child's physical, mental, moral, or emotional health, and in a visitation dispute between parents with a "tumultuous history," the trial court's order granting supervised visitation, but requiring the parties to agree to the time and place effectively gave the petitioning father control of respondent's right to visit with her child by not ensuring that respondent would have visitation when the parties did not agree on a time and place; therefore, that portion of the order was reversed and the cause was remanded for the setting of a specific schedule, unless the parties agreed otherwise. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-F-429; the Hon. Robert J. Morrow, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Sarane C. Siewerth, of Glenview, for appellant.

No brief filed for appellee.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Christine C., challenges the trial court's visitation order providing for supervised visitation between Christine and her son, K.E.B., only if she and petitioner, Thomas E.B., agreed on the time and place of the visitation. Christine argues that the court's order effectively granted her no visitation. We reverse and remand.

¶ 2                                    I. BACKGROUND
¶ 3                                  A. Earlier Proceedings
¶ 4    Christine and Thomas met in April 2009, and K.E.B., their son, was born on May 7, 2010. Thomas petitioned to establish parentage, custody, and child support under the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2010)). In a subsequent amended petition, he sought sole custody of K.E.B., alleging that Christine's parenting ability was severely compromised by her chronic alcoholism and erratic behavior. The trial court appointed Susan Lonergan as the guardian *ad litem* (GAL).

¶ 5    At trial, Christine testified that, in 2007, she was arrested and charged with driving under the influence (DUI), and her driver's license was revoked for three years. After counseling and community service, she regained her license on December 8, 2011. Christine stated that she was in a relationship with Thomas from 2009 to 2011 and that they had been engaged to be married. Addressing her use of alcohol, Christine testified that she drank to excess in May 2011. Further, a June 2011 incident resulted in an indicated finding against her by the Department of Children and Family Services. She underwent alcohol and substance abuse counseling. A safety plan required that neither Christine nor Thomas have unsupervised contact with K.E.B. Christine moved out of Thomas's home in July 2011. A May 2012 urine test of Christine was positive for alcohol and a subsequent hair follicle test was positive for cocaine.

¶ 6    Thomas testified that, in August 2011, he was declared K.E.B.'s father and a child support obligation was imposed. He had never observed anything in his son's behavior that reflected that Christine was not a good mother to K.E.B., and he stipulated that, when she was sober, Christine was a competent parent. However, Thomas related several incidents during which

Christine appeared intoxicated. He also addressed his own substance abuse issues. In 2007, Thomas had a problem with cocaine and checked himself into a rehabilitation program. He testified that he had not taken cocaine since that time. He also related that he was charged with DUI that year, but had not been charged since that time.

¶ 7    The GAL initially recommended that Christine be K.E.B.'s primary residential parent, with very liberal visitation granted to Thomas. She recommended that Christine submit to random alcohol and drug testing for 12 months. The GAL also noted that Christine had been K.E.B.'s primary caretaker. However, the GAL changed her recommendation after an October 2012 incident where Christine was videotaped at a bar and later arrested for DUI. Although the tape did not depict a glass of alcohol in front of Christine and she did not sound intoxicated, the arresting officer had testified that Christine failed three field sobriety tests administered after she had left the bar. The GAL testified that she changed her recommendation because she had "questions regarding Christine's decision making with respect to her consumption of alcohol."

¶ 8    On January 24, 2013, the trial court awarded the parties joint custody, with Thomas receiving residential custody. It found that Christine had been K.E.B.'s primary caregiver since the couple separated. Both parties, according to the court, were active in their son's life and had shared parenting time. The court also found that both parties had a history of substance abuse, "which the father had done a better job of addressing and moving on from at this point." It noted that Christine had DUI cases in 2006 and 2007 and the pending DUI case from October 2012. The court also found that the GAL's most recent recommendation was "based upon the mother's poor judgment on her use of alcohol." It ordered Christine to refrain from using illegal drugs or alcohol and set forth visitation guidelines for Christine–generally, every other weekend, without overnights, and two weekday evenings, but also overnight visitation up to three times per year, if a maternal grandparent was present and seen by Thomas when he dropped off K.E.B. The court also ordered that Thomas or a member of his family pick up and drop off K.E.B. at Christine's residence for visitation. It also directed Christine to secure, at her own expense, an alcohol evaluation report from an approved agency and to enroll in any recommended alcohol treatment program.

¶ 9    Christine appealed, and this court affirmed the trial court's custody award but reversed and remanded on the visitation findings. *In re Parentage of K.E.B.*, 2013 IL App (2d) 130427-U, ¶ 169. We concluded that the trial court applied the best-interests standard when it should have applied the serious-endangerment standard and that it "failed to specifically find that Christine's condition and behavior posed a danger to K.E.B." *Id.* Specifically, the trial court had not made the requisite findings that restricted visitation (*i.e.*, no overnight visitation as a general rule and, when allowed, only with supervision) was necessary to prevent seriously endangering K.E.B.'s physical, mental, moral, or emotional health. *Id.* We remanded for the court to apply the proper standard in determining Christine's visitation rights. *Id.*

¶ 10                                  B. Current Appeal

¶ 11    On October 30, 2013, Thomas filed a petition for a rule to show cause, alleging that Christine appeared to be intoxicated when he arrived to pick up K.E.B. on August 13, 2013. Christine and her boyfriend had had an altercation and she had broken a glass picture frame. Thomas called the police, who determined that Christine was intoxicated. He further alleged that, six months earlier, he had smelled the odor of alcohol on Christine's breath when he picked up K.E.B., and the child's diaper had not been changed during the visitation.

¶ 12    On November 15, 2013, the remanded case came before the trial court for a pretrial conference. The court directed Thomas's counsel to prepare proposed findings and to submit them to Christine's counsel, who was to respond by November 22, 2013, the same day set for a hearing on Thomas's petition. However, Christine's counsel moved to withdraw.

¶ 13    On November 22, 2013, Thomas's counsel presented proposed findings and the hearing commenced, along with a parentage case involving Dennis Schultz, with whom Christine had two children.

¶ 14    A bystander's report reflects that Officer Green of the Elgin police department testified on Schultz's behalf that, on August 13, 2013, Green responded to a call from Christine's residence. When he arrived, he observed Christine and her boyfriend, Josh Rydin. They both appeared agitated and "to have been drinking." (A supplemental bystander's report by Thomas's counsel states that Green testified that Christine was highly intoxicated and that the couple had a verbal altercation that day.[1]) Christine showed Green text messages from Rydin in which he stated that he was going to kill himself. Green took Rydin to the hospital for evaluation. Green stated that there were no children present during this incident and that he did not charge Christine with any offense.

¶ 15    Officer Schuttrow of the Elgin police department testified that, on August 31, 2013, he responded to a call from Rydin at Christine's residence, alleging domestic battery. When he arrived, he observed Rydin and Christine arguing outside the residence. Schuttrow separated them. Rydin, whose shirt was torn, told Schuttrow that he and Christine had been out to dinner and had consumed a few drinks. When they returned to the house, Christine attacked him. He did not explain to Schuttrow why they argued. Christine told Schuttrow that, while she was trying to call her parents, Rydin grabbed her phone and pushed her to the floor when she tried to retrieve it. She had various cuts, scratches, bruises, and abrasions on her forearm, bicep, knees, shoulder blade, and neck. She also had a bruise and swelling above her right eye. Schuttrow further testified that Christine related that she was defending herself against Rydin, whereas Rydin stated that he did not know how Christine sustained her injuries. Both Christine and Rydin had been drinking and were agitated. (In the supplemental bystander's report, Thomas's counsel states that Schuttrow testified that Christine was highly intoxicated and that she told him that she had set up the evening of drinks with Rydin.) No children were present, and Schuttrow did not charge Christine with any offense.

¶ 16    Elgin police officer Cox testified that he was called to Christine's residence on August 31, 2013, by Rydin, who asserted that Christine had slashed his tires. Christine denied this, but stated that vandalism had occurred in the neighborhood. Cox observed no children at the residence, and he did not charge either Christine or Rydin with any offense. The case was closed.

¶ 17    Thomas testified that he smelled the odor of alcohol on Christine about 25 to 30 times when he picked up K.E.B. from her home. However, he did not report this to the police or to the GAL (though he also testified that he had called the police "several times" when he believed that Christine was drinking). (The supplemental bystander's report reflects that Thomas testified to a specific incident in which Christine was intoxicated when he picked up

---

[1] Both Christine and Thomas stipulated to the inclusion in the appellate record of both the initial and supplemental bystander's reports.

K.E.B. following a four-hour visit and the child was wearing the same diaper that he had been when Thomas dropped him off; the diaper was full of urine and feces.)

¶ 18 Christine called no witnesses. The bystander's report reflects that, at the end of the testimony, the trial court stated that it was terminating Christine's visitation and thereafter Christine "ran out of the courtroom and collapsed." Christine's counsel ran after her and took her to the hospital; counsel did not review the court's order before it was entered that day. (The supplemental bystander's report reflects that the trial court told Christine that she had to choose between alcohol and the children and that she had to initiate alcohol treatment at the Ecker Center.) An affidavit filed with the bystander's report, signed by Saundra C. (Christine's mother), states that she was present at the hearing and that, after the court reporter exited the courtroom, the trial court stated to Christine: "Ms. [C.] this is all on you. If you take another drink I will terminate your parental rights."

¶ 19 Also on the date of the hearing, the trial court issued its written findings. It determined that Christine's use of alcohol placed K.E.B. in danger. The court suspended Christine's unsupervised visitation with K.E.B., but allowed daytime visitation one day per week with advance notice to Thomas and Christine's parents' presence at all times. The court forbade Christine from driving without a fully operational breath alcohol ignition interlock (BAIID) device in her vehicle. The court also found that Christine had violated its January 24, 2013, order forbidding her from consuming alcohol. (The supplemental bystander's report reflects that the court specifically stated that this violation warranted the suspension of unsupervised visitation.) It reserved ruling on a finding of contempt. The court ordered Christine to present on the next court date a new alcohol evaluation and treatment plan and evidence that she had a functioning BAIID device in her car. The court also ordered Christine to present written evidence that the BAIID device fees had been paid and that the device had been recalibrated every month. The case was set for status on January 17, 2014.

¶ 20 The trial court also entered Thomas's proposed findings (750 ILCS 5/607 (West 2012)). Therein, the court found that Christine was intoxicated on August 13, and 31, 2013, and at other times "when she was under the court's January 24, 2013[,] order not to consume alcohol." The court also found that those incidents showed that Christine did not handle stress well, turned to alcohol in stressful situations, and could not control her consumption of alcohol. Thus, K.E.B.'s physical, mental, and moral health was endangered and the visitation restrictions were necessary to mitigate the danger.

¶ 21 At the January 17, 2014, status hearing, Christine's counsel informed the court that a BAIID device had been installed on Christine's car on January 14, 2014. Also, on November 27, 2013, Christine had entered "detox" at Central Du Page Hospital. Counsel also informed the court that in December Christine had voluntarily checked herself into the "SHARE" residential treatment program for 30 days and that she was continuing treatment with an intensive outpatient program with SHARE. She was also attending the Ecker Center for psychiatric counseling.

¶ 22 Christine testified that she had been using alcohol as a means of stress management during a very stressful year and that she did not wish to live her life that way anymore. She described the SHARE inpatient program, where she recognized that she was an alcoholic. She participated in every activity offered, from 6:45 a.m. to 6:30 p.m., and learned coping and stress management mechanisms. Christine stated that she had completed the program and was receiving intensive outpatient treatment three evenings per week, as well as attending

Alcoholics Anonymous meetings two evenings per week (which would increase to four or five times per week after she completed the six-week outpatient program). Christine further testified that she had been sober for 48 days, was submitting to random drug and alcohol testing, was taking prescription medication for stress, anxiety, and depression, and was seeing a psychiatrist at the Ecker Center, who monitored her medications. When she completes her outpatient program, she will start seeing a therapist. Christine also stated that she was working as a waitress (in a restaurant that does not serve alcohol) 27 hours per week, and she submitted documentation concerning the BAIID device in her car and her participation in the SHARE program.

¶ 23 While she was in inpatient treatment, Christine saw K.E.B. only one time, at Christmas. Although the inpatient program provided for the participants to have regular visits with their children, Thomas had initially refused her request for a Christmas visit. Christine's father then contacted Thomas's father, and the visit took place. Christine also testified that she saw K.E.B. twice before the status hearing. She stated that her parents live in North Carolina and that her father works full time as an assistant district attorney. She is no longer seeing Rydin. Christine further testified that, on November 22, 2013, she had consumed alcohol the prior evening. She has abused illegal drugs in the past.

¶ 24 At the conclusion of Christine's testimony, her counsel requested that the court restore the previous visitation schedule (*i.e.*, two evenings per week and every other weekend, without overnights). Counsel also reminded the court that she did not have the opportunity to review the November 22, 2013, order before it was entered, because she was attending to Christine's medical needs after she had collapsed. Counsel argued that the requirement that both of Christine's parents be present effectively meant that she could never have visitation. The court encouraged the parties' attorneys to discuss visitation details, but provided little specific guidance.

¶ 25 After a recess, the attorneys notified the court that they had agreed that visitation could be supervised by Patty Bowker (Thomas's mother), Denise Thulin (relationship unspecified), or Saundra C.

¶ 26 The trial court then granted Christine visitation with K.E.B. "a minimum of 2 nonconsecutive Saturdays per month *at a time and place agreed by the parties*" (emphasis added) and supervised by Patty Bowker, Saundra C., or Denise Thulin. The court ordered Christine to complete the therapy and treatment she had offered in her testimony. It also ordered that visitation was contingent on successful drug and alcohol testing as part of aftercare with the SHARE program. It ordered Christine to submit to the GAL the printout from her BAIID device within 24 hours of the results becoming available and that the GAL report to counsel and the court any positive alcohol tests. (It reserved the drug testing issue.) Finally, Christine's counsel was granted leave to withdraw and Christine was granted 21 days to obtain new counsel. Christine appeals.

¶ 27 II. ANALYSIS

¶ 28 Initially, we note that Thomas has not filed an appellee's brief. However, because the record is simple and the issues can be decided without an appellee's brief, we will decide the merits of this case. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 29    Turning to the merits, Christine argues that the trial court abused its discretion in granting her supervised visitation only if she and Thomas agreed on the time and place of the visitation. She contends that, by giving Thomas ultimate control over all of her visitation, the court effectively gave her no visitation at all. For the following reasons, we agree.

¶ 30    This action was initiated under the Parentage Act. Pursuant to section 14 of that statute, visitation issues are resolved in accordance with factors set forth in the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2012)). 750 ILCS 45/14(a)(1) (West 2012).

¶ 31    "Sound public policy encourages the maintenance of the parent-child relationship, and only in extreme circumstances may courts deprive a parent of visitation." *In re Marriage of Campbell*, 261 Ill. App. 3d 483, 492 (1993). "A parent is entitled to reasonable visitation rights unless the custodial parent proves, by a preponderance of the evidence, that without a restriction of visitation, the child's physical, mental, moral[,] or emotional health will be seriously endangered." *Id.*; see 750 ILCS 5/607(a) (West 2012) ("[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral[,] or emotional health"). "Visitation orders will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Ross*, 355 Ill. App. 3d 1162, 1167 (2005). An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 658 (1998).

¶ 32    Section 607(c) of the Marriage Act provides:

"The court may modify an order granting or denying visitation rights of a parent whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral[,] or emotional health." 750 ILCS 5/607(c) (West 2012).

¶ 33    A visitation *restriction*, thus, must meet the serious-endangerment standard, which is more onerous than the best-interests standard (which governs the *modification* of visitation (*In re Marriage of Anderson*, 130 Ill. App. 3d 684, 687 (1985))). Examples of restrictions include a termination of visitation, a prohibition on overnight visitation, or a requirement of supervised visitation. *In re Marriage of Ross*, 355 Ill. App. 3d 1162, 1167 (2005). "[I]t is not the result–the actual change in visitation–that distinguishes a restriction from a modification; it is the purpose for the change." *In re Marriage of Chehaiber*, 394 Ill. App. 3d 690, 697 (2009).

¶ 34    Christine contends that, although alcohol abuse is a legitimate basis for restricting a noncustodial parent's visitation by requiring the presence of a supervisor, her use of alcohol was *never* argued to warrant the *complete suspension* of visitation. She notes that the November 22, 2013, order allowed her supervised visitation if both her parents were present. Further, at the January 17, 2014, hearing, her counsel did not object to supervised visitation, but the order gave Thomas sole control over her visitation. Thus, even if a supervisor were present, Thomas could prevent visitation simply by not agreeing to the time or place. Christine contends that the order placed no limits on Thomas's control (although he had initially denied her Christmas visitation) and therefore was an abuse of discretion, especially in light of the fact that she had done everything the court had required of her since the November 22, 2013, hearing.

¶ 35 Christine also notes that the trial court misspoke when it noted that she had been in the SHARE program on prior occasions. She asserts that, before this case, she had never been in the program. She further notes that the BAIID device ensures that she will not drive while intoxicated and that having supervised but no overnight visitation will protect K.E.B. from any harm by ensuring that others are present to monitor her behavior. A regular daytime visitation schedule, Christine urges, even with a supervisor, will protect the mother-child relationship, which is a valuable goal of the State.

¶ 36 We conclude that the trial court abused its discretion in requiring that the parties agree to the time and place of visitation, and we reverse that portion of the court's order. In *In re Marriage of LaTour*, 241 Ill. App. 3d 500, 503-05 (1993), the reviewing court held that a visitation order requiring that summer visitation and regular weekend visitation occur at a *time* agreed to by the parties constituted a restriction and was erroneous where the trial court failed to make a serious-endangerment finding. As relevant here, the court determined that the requirement that the parties agree to the timing of visitation "operate[d] to grant the ultimate determination of whether [the father] may exercise his visitation rights to [the mother]." *Id.* at 504. Based upon the parties' history of discord and inability to agree, the court concluded that the trial court erred in denying the father's request for a structured visitation schedule. *Id.* at 505. "[T]here must be a scheduled visitation which will occur when [the parties] fail to agree." *Id.* The court reversed the aspect of the trial court's order denying the father's request for a structured visitation schedule and remanded the cause for a determination of such, unless the parties agreed otherwise. *Id.*

¶ 37 Likewise, the evidence here reflects that Christine and Thomas have a tumultuous history and further shows that, as illustrated by the Christmas visitation incident, there is little likelihood of any agreement on the time and place of visitation. Furthermore, the parties agreed below that Christine be granted supervised visitation. Requiring the parties to agree to time and place effectively eliminated the provision of supervised visitation, by giving Thomas control of Christine's access to K.E.B. We acknowledge that the order specifies that Christine receive a *minimum* of two nonconsecutive Saturday visits per month at a time and place agreed upon by the parties. However, given the parties' tumultuous history, the order is not sufficient to ensure that Christine will receive visitation when she and Thomas fail to agree on the time and place. *Id.* Therefore, the portion of the order requiring that Christine's visitation be "at a time and place agreed by the parties" is reversed and the cause is remanded for the trial court to set a specific schedule, unless the parties agree otherwise.

¶ 38                                III. CONCLUSION
¶ 39 For the reasons stated, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings consistent with this opinion.

¶ 40 Reversed and remanded with directions.